350 F.2d 61
 John C. LANKENAU,* Esq., as Receiver of Defendant Lester D.
Brown, d/b/a L. D. Brown Co., Appellant,
v.
COGGESHALL & HICKS, Applicant-Appellee.
*This case came up on appeal under the style SEC
v.
Brown, that used in the District Court. Upon request,
however, the case on appeal has been renamed, as indicated.
SECURITIES AND EXCHANGE COMMISSION, Plaintiff, v. Lester D.
BROWN, d/b/a L. D. Brown Co., Defendant.
 No. 330, Docket 29403.
 United States Court of Appeals Second Circuit.
 Argued Jan. 22, 1965.
Decided July 23, 1965.
 
 Sydney D. Bierman, New York City, for appellant.
 Mortimer Goodman, New York City (Grandefeld & Goodman, New York City, on the brief), for appellee.
 Before MOORE, FRIENDLY and MARSHALL, Circuit Judges.
 MOORE, Circuit Judge:
 
 
 1
 In February 1964 the Securities and Exchange Commission (SEC) began investigating Lester D. Brown, d/b/a L. D. Brown Co., a registered securities broker-dealer. Brown agreed to effect no further transactions until he had complied with SEC rules as to bookkeeping and net capital. He failed to comply with this agreement. From March on, the SEC received complaints from more than ten other brokers, saying that Brown had failed to deliver securities (of a total value of more than $64,335) which they had purchased and paid for. Coggeshall & Hicks (C&H) were in that position with respect to 166 shares of Syntex stock which it had had to buy after Brown delivered-- belatedly and only after repeated urging-- only 234 of 400 to which C&H were entitled. The extent of Brown's trouble is suggested by his own admission in April 1964 that he had a capital deficit of between $80,000 and $100,000.
 
 
 2
 On May 5th, C&H obtained in the New York Supreme Court a warrant of attachment to be used for security purposes in an in personam action against Brown for conversion in which it sought $12,887 in damages. In the warrant, the sheriff was ordered to levy at any time before final judgment upon such property in which Brown had an interest as would satisfy C&H's demand for judgment. The next day the sheriff served the warrant of attachment on Grace National Bank which held $26,557 of Brown's assets. Brown's only other assets appeared to be some $9,000 worth of securities in his vault, some of which seemed to be earmarked for particular customers. On May 20th the Bank served the sheriff with a certificate showing the property and assets of Brown which it held, namely, $1,744 in cash and $24,813 worth of securities in a security clearance account. See N.Y. CPLR 6219. On May 25th, the sheriff demanded that the Bank turn over the assets listed on the certificate.
 
 
 3
 On May 28th, the SEC brought an action against Brown in the Southern District of New York seeking (1) an injunction against further trading and against continued violation by Brown of the securities laws, (2) appointment of a receiver of all of Brown's assets to hold them subject to further order of the court, and (3) an order restraining Brown and his agents, depositaries, and banks, inter alia, from transferring or otherwise disposing of any of his assets pending determination of the request for appointment of a receiver. This temporary restraining order was granted that day, Brown consenting thereto. The complaint alleged that Brown had assets that he might transfer or dissipate to the immediate and irreparable loss and damage of persons to whom money or securities were owing. To prevent this and to prevent further violations of the securities laws, it was said, a receiver should be appointed to marshal the assets, prosecute all claims, distribute the assets among the persons entitled thereto, to keep current records, and to take such other action as the court should deem proper. In a supporting affidavit a representative of the SEC said that Brown's position was 'precarious,' his compliance with the laws 'questionable,' and his 'solvency doubtful'; in brief, he was 'a serious danger to the investing public.' Expenditious prosecution of the action was thought imperative.
 
 
 4
 On June 3d a preliminary injunction covering the requested relief was granted by Judge Tyler and a receiver was appointed who was ordered to collect and take charge of all of the assets and property of Brown and to hold them subject to further order of the court. The restraining order earlier issued was continued, pending appointment and qualification of the receiver, Brown again consenting to this order of which the Bank received a copy.
 
 
 5
 A number of other actions against Brown in addition to C&H's had been begun prior to appointment of the receiver, and several more were anticipated. On June 23rd Judge Tyler granted the receiver's request for an order enjoining and staying 'all persons * * * from commencing or continuing any suits against the defendant herein or his property other than suits to enforce liens upon the property of said defendant.'
 
 
 6
 On September 15th C&H moved for modification of that order to except its pending state court conversion action and attachment. Judge Tyler entered an order granting the application and authorizing C&H to proceed with its action and attachment, without prejudice to the receiver pursuing whatever rights he might have in the New York courts. Securities and Exchange Commission v. Brown, 235 F.Supp. 57 (S.D.N.Y.1964). The receiver appeals from this order, limiting his appeal now to the extent that the order allows C&H to enforce its attachment against Brown's assets held by the Bank.
 
 
 7
 The problem presented is whether, having appointed a receiver of a defendant's assets ancillary to an action instituted by a federal agency and over which the federal courts have exclusive jurisdiction, a federal court can and should stay enforcement of an attachment of property being used solely to secure a possible judgment in a state court action, where no state officer has yet obtained actual custody of the property.
 
 
 8
 In appointing the receiver, the district court was in this case exercising its exclusive federal jurisdiction for the purpose of enforcing the Securities Exchange Act of 1934, see 15 U.S.C.A. 78aa. While it is true that the Act does not explicitly provide for appointment of receivers, there is little reason to doubt that equitable power to do so exists. See 3 Loss, Securities Regulation 1510-14 (2d ed. 1961). Less well established is the scope of the powers that a receiver may be granted. Thus, the power to liquidate the estate has been held in one circuit to be almost nonexistent under the analogous provisions of the Securities Act of 1933, 15 U.S.C. 77t, see Los Angeles Trust Deed & Mortgage Exch. v. SEC, 285 F.2d 162, 181-182 (9th Cir. 1960), cert. denied, 366 U.S. 919, 81 S.Ct. 1095, 6 L.Ed.2d 241 (1961). Similarly, in Esbitt v. Dutch-American Mercantile Corp., 335 F.2d 141, 143 (2d Cir. 1964), we expressed strong reservations as to the propriety of allowing a receiver to liquidate; it was permitted only because it had been virtually completed by the time the appeal had been decided. As we said in Esbitt, which also concerned a receiver appointed in an action under the Securities Act of 1933, receiverships ancillary to SEC actions against brokers or broker-dealers should not be continued, in a case involving insolvency, beyond the point necessary to get the estate into the proper forum for liquidation-- the bankruptcy court.
 
 
 9
 That there are adverse claims to Brown's assets is clear. By the time of the receiver's appointment, one other creditor had already obtained a favorable judgment against Brown and had already levied an execution on the same assets held by the Bank; only the stay has barred enforcement of that judgment. Obviously, only the federal receiver is well-situated for, or likely to be interested in, giving notice to all concerned about Brown's affairs. And while the federal receivership proceeding has the specific purpose of protecting property and rights to property affected or likely to be affected by Brown's malfeasance, the state action and attachment is concerned only with C&H's complaint about 166 shares of stock. Rights to Brown's assets held by the Bank enter that action only collaterally. Compare 7 Moore, Federal Practice, P66.08(3), at 1955 (2d ed. 1955).
 
 
 10
 There is a substantial jurisdictional basis for allowing the federal court receiver to have and keep custody and control of the assets in question, and to obtain the relief needed to implement that custody. If after considering the federal interests to be served by continuing the stay, as against the state interests to be served by its modification, the district court had vacated the stay as an exercise of discretion then we would have to consider directly whether to have done so was an abuse of discretion. However, the court apparently acted on the belief that it had no power to continue the stay after the levy had been served on the Bank. Feeling governed by the rule 'that the court which first acquires jurisdiction over the res shall proceed without any interference from other courts,' the court concluded that 'the applicant (C&H) has proceeded far enough in its state court action for that court to be deemed to have acquired jurisdiction over the now-disputed res and thus be free at this stage from the total restraint of the June 23rd order.' 235 F.Supp. at 59.
 
 
 11
 The court was on sound ground in vacating the stay against C&H's further prosecution of the in personam state court conversion action (and the receiver no longer opposes it), for the mere pendency of a federal court action-- even if of the same character or involving the same issues as a pending state court action-- will not be grounds for the federal court to enjoin prosecution of the state court action. See Kline v. Burke Constr. Co., 260 U.S. 226, 230, 43 S.Ct. 79, 67 L.Ed. 226 (1922); Riehle v. Margolies, 279 U.S. 218, 49 S.Ct. 310, 73 L.Ed. 669 (1929); International-Great No. R.R. Co. v. Sneed, 269 U.S. 593, 46 S.Ct. 23, 70 L.Ed. 429 (1925). See generally 1A Moore, Federal Practice PP0.214-.218, .222-.223 (2d ed. 1961); 7 Moore P66.08(3) & nn. 2, 4.
 
 
 12
 On the other hand,
 
 
 13
 it is settled that where a federal court has first acquired jurisdiction of the subject-matter of a cause, it may enjoin the parties from proceeding in a state court of concurrent jurisdiction where the effect of the action would be to defeat or impair the jurisdiction of the federal court. Where the action is in rem the effect is to draw to the federal court the possession or control, actual or potential, of the res, and the exercise by the state court of jurisdiction over the same res necessarily impairs, and may defeat, the jurisdiction of the federal court already attached. The converse of the rule is equally true, that where the jurisdiction of the state court has first attached, the federal court is precluded from exercising its jurisdiction over the same res to defeat or impair the state court's jurisdiction. Kline v. Burke Constr. Co., supra, 260 U.S. at 229, 43 S.Ct. at 81.
 
 
 14
 Accordingly, there has developed the general rule that for 'proceedings in rem or quasi in rem * * * the state or federal court having custody of * * * property has exclusive jurisdiction to proceed. Princess Lida v. Thompson, 305 U.S. 456, 465-468 (59 S.Ct. 275, 83 L.Ed. 285 (1939)).' Donovan v. City of Dallas, 377 U.S. 408, 412, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964). The rule 'applies as well where (although not strictly in rem or quasi in rem,) suits are brought to marshal assets, administer trusts, or liquidate estates, and in suits of a similar nature where, to give effect to its jurisdiction, the court must control the property.' Princess Lida v. Thompson, supra, 305 U.S. at 466, 59 S.Ct. at 280; see, e.g., Farmers' Loan & Trust Co. v. Lake St. Elevated R.R. Co., 177 U.S. 51, 61-62, 20 S.Ct. 564, 44 L.Ed. 667 (1900); Palmer v. State of Texas, 212 U.S. 118, 129-130, 29 S.Ct. 230, 53 L.Ed. 435 (1909); Waterman v. Canal-Louisiana Bank & Trust Co., 215 U.S. 33, 44, 30 S.Ct. 10, 54 L.Ed. 80 (1909); Penn Gen. Cas. Co. v. Com. of Pennsylvania ex rel. Schnader, 294 U.S. 189, 195-198, 55 S.Ct. 386, 79 L.Ed. 850 (1935); United States v. Bank of New York & Trust Co., 296 U.S. 463, 477, 56 S.Ct. 343, 80 L.Ed. 331 (1936). But cf. Mandeville v. Canterbury, 318 U.S. 47, 63 S.Ct. 472, 87 L.Ed. 605 (1943). The purpose of the rule is clear. It would be a most unseemly intrusion, inconsistent with the implications of federalism, were an order of one court to deprive the other court of its basis for jurisdiction and power to proceed.
 
 
 15
 The purpose of the attachment in this case, as C&H themselves say, 'was not to procure jurisdiction over Brown, a New York resident, but to obtain a lien upon assets in a conversion action.' Moreover, as the New York courts have noted, "numerous contingencies might arise that would prevent the * * * attachment lien from ever becoming perfected by a judgment awarded and recorded. Thus, the attachment lien is contingent and inchoate-- merely a lis pendens notice that a right to perfect a lien exists." Reich v. Spiegel, 208 Misc. 225, 233, 140 N.Y.S.2d 722, 729 (Sup.Ct.1955). Since the res was not the basis of the state court's jurisdiction, the case presents no such problem as might arise in that event. Here the property stood only as security for a possible judgment, transfer creates no obstacle to its rendition, and the creditor will have whatever priority the attachment justifies.
 
 
 16
 Even if for some purposes the attachment would, after mere levy, be deemed perfected,[1] cf. McCarthy v. Farley, 149 Misc. 360, 267 N.Y.S. 733 (Sup.Ct.1931), or the property would be deemed in the sheriff's constructive possession, where the sheriff's actual custody need not be disturbed because it has never existed, a federal policy of noninterference, see Covell v. Heyman, 111 U.S. 176, 4 S.Ct. 355, 28 L.Ed. 390 (1884), is not applicable.[2] Moreover, having served the levy and demanded possession, the sheriff had, in a sense, done all he was ordered or entitled to do under the warrant of attachment. It was up to C&H to seek to compel the garnishee to turn over the assets. See N.Y. CPLR 6214(d); cf. Zarski v. Wohl & Cie., 186 Misc. 824, 61 N.Y.S.2d 115 (Sup.Ct.1946).
 
 
 17
 C&H place great stress on the district court decision in Steingut v. National City Bank, 38 F.Supp. 451 (S.D.N.Y.1941). That was an action by the receivers of a foreign bank-- the Russo-Asiatic Bank (Russo)-- against the National City Bank (National) to recover Russo's deposit in National. National answered as a defense that before commencement of the action in which the receivers were appointed, four warrants of attachment had been issued out of the New York Supreme Court and duly levied against Russo's credit balance with National, all of which attachments were outstanding and unsatisfied. Also, prior to the same date one Givatowsky had brought an action in the New York Supreme Court (which was still pending) to recover part of the same credit balance. Moreover, the United States as assignee had sued in the Southern District to recover the credit balance. All these persons were alleged in the defense to be indispensable parties. The receivers' motion to strike the defense was granted with respect to Givatowsky and the United States, but was denied with respect to the attaching creditors who had obtained the attachment warrants. The court reasoned that if the attaching creditors were not indispensable parties in a position to plead the attachments as a defense, then 'the (attachment) warrants would not be given substantially the same force they would be given by the courts of New York * * *,' id. at 452, which would be contrary to the principles of full faith and credit. As for the effect given under New York law, the court read West Virginia Pulp & Paper Co. v. Peoples' Home Journal, Inc., 233 App.Div. 376, 253 N.Y.S. 178 (1st Dep't 1931), as holding 'that, when a lien had been acquired on a bank deposit by a warrant of attachment, it was error to permit the credit balance to be given to the receiver of the depositor because to do so interfered with the lien.' 38 F.Supp. at 452.
 
 
 18
 We think that with respect to a federal court-appointed receiver, reliance on West Virginia Pulp would be misplaced. That case actually held that a receiver appointed by a New York court as ancillary to a New Jersey receivership of a New Jersey corporation which also did business in New York would not be entitled to custody of the property when, prior to the New York receiver's appointment, the New York sheriff, without taking possession, had levied an attachment on the property in favor of a New York state court plaintiff who after the appointment had gained a judgment. To the extent that West Virginia Pulp rested upon a policy of protecting New York judgment creditors from having their security defeated by the intervention of a foreign receiver for the benefit of out-of-state creditors, see Austin v. A. E. Ottaviano, Inc., 38 Misc.2d 616, 237 N.Y.S.2d 81 (Sup.Ct.1962), federal supremacy might hinder application of that policy here[3] even if comity and full faith and credit would not there.[4]
 
 
 19
 But, in any case, Steingut is really not in point, even apart from the different procedural context of the case. Although the opinion does not so indicate, the receivers in question seem to have been appointed by the state courts, see Russo-Asiatic Bank v. Guaranty Trust Co., 27 F.Supp. 382, 383 (S.D.N.Y.1939). And, it also seems, although it is not clear from the opinion, that the state court actions in Steingut, other than Givatowsky's, had already been reduced to judgments for the attaching creditors against Russo. It may be also that no purpose would have been served by handing the credit balance over to the receiver subject to the liens. Such other authority as we have found either supports our decision or is distinguishable.[5]
 
 
 20
 In striking a balance between respect for the orderly processes of state judicial administration and the collateral needs of exclusive federal jurisdiction for the enforcement of certain federal regulatory laws, we certainly would not 'render nugatory all attachment proceedings,' as C&H suggest, nor do we 'penalize' C&H for diligently pursuing its remedies. One purpose of C&H's attachment is to ensure that Brown's assets will not be secreted or dissipated. But here even without the attachment, the assets will be protected by the receiver. And if the property is being kept by some responsible authority, such as a federal court-appointed receiver, then a potential judgment creditor has the heart of the relief provided by the attachment.
 
 
 21
 Assuming that C&H's attachment efforts were sufficiently perfected under the circumstances under state law to create some kind of lien or priority rights in their favor, see N.Y. CPLR 5234, 6226,[6] appointment of a federal court receiver under orders to take charge of all of Brown's property does not destroy those rights. The receiver takes custody of the property subject to any rights previously acquired by the attachment. See Cowden v. Wild Goose Min. & Trading Co., 199 F. 561, 566-567 (9th Cir. 1912); Central Trust Co. v. Worcester Cycle Mfg. Co., 114 F. 659, 665-666 (D.Conn.1902). See also Lowe's, Inc. v. Hoyt Management Corp., 83 F.Supp. 863, 865 (S.D.N.Y.1949) (interpleaded fund paid into court but held without prejudice to any lien created by state court attachment). Compare United States v. Mr. Hamburg Bronx Corp., 228 F.Supp. 115, 124-125, 126-127 (S.D.N.Y.1964). See generally 1 Clark, Receivers 275 (3d Ed. 1959). It is possible that C&H's rights may ultimately be subordinated to a better claim, as, for example, where the attached assets are themselves traced assets, cf. SEC v. Barrett Herrick & Co., 149 F.Supp. 507, 508 (S.D.N.Y.1957), as apparently were the assets on hand in Brown's vault. But presumably the same result could come about if the other claimants moved to vacate the attachment, instituted a special proceeding to determine adverse claims, or intervened in a turn-over proceeding. Thus, C&H would be worse off only to the extent that persons having superior claims to Brown's assets do not hear of C&H's statement or for some other reason cannot or do not so proceed, perhaps in reliance on the existence of the receivership.
 
 
 22
 Consideration of this difficult and close question has led us to the belief that the district court erred in concluding that it was without power to continue the stay against further enforcement of C&H's attachment. Cf. Virginia T. & C. Steel & Iron Co. v. Bristol Land Co., 88 F. 134 (W.D.Va.1898).
 
 
 23
 It is our opinion that the District Court has the power to exercise its discretion to take such action as to the Court may seem just and proper in the light of the facts presently before the Court, and that the prior attachment for security purposes in the State court action does not give that court exclusive jurisdiction over the property attached.
 
 
 24
 Reversed and remanded to the District Court for such action as it deems to be proper.
 
 
 
 [1]
 Even under New York law, mere service of the levy does not complete the attachment for all purposes. If the property levied upon is not turned over to the sheriff, the plaintiff must commence a turn-over proceeding. See N.Y. CPLR 6214(d). Moreover, the expiration of 90 days from service of the levy normally voids the levy, 'except as to property or debts which the sheriff has taken into actual custody' or unless a turn-over proceeding has been commenced. 6214(e)
 
 
 [2]
 The case might be different if the sheriff had perfected the levy and taken possession of the defendant's property but had then relinquished it to the attaching state court judgment creditor under a bond, as prescribed by state law. Then the property in that creditor's hands could be deemed in the possession of the sheriff and, therefore, not subject to process from a federal court for the benefit of a different federal court judgment creditor of the same defendant. Cf. Hagan v. Lucas, 35 U.S. (10 Pet.) 400, 403-404, 9 L.Ed. 470 (1836)
 
 
 [3]
 Compare Moran v. Sturges, 154 U.S. 256, 14 S.Ct. 1019, 38 L.Ed. 981 (1894), where a state court's usual power to protect property, the custody of which it had ordered a state receiver to take, was found inadequate to bar seizure by federal marshals pursuant to a libel to enforce maritime liens, as to which federal jurisdiction was exclusive. The Supreme Court there reversed Matter of Trustees of Schuyler's Steam Tow Boat Corp., 136 N.Y. 169, 32 N.E. 623, 20 L.R.A. 391 (1892), a case much relied on by C&H. See also Propper v. Clark, 337 U.S. 472, 492-493, 69 S.Ct. 1333, 93 L.Ed. 1480 (1949)
 
 
 [4]
 There is involved here no question as to whether full faith and credit have been given to the New York attachment proceeding. Compare Green v. Van Buskirk, 72 U.S. (5 Wall.) 307, 18 L.Ed. 599 (1866), with Cole v. Cunningham, 133 U.S. 107, 10 S.Ct. 269, 33 L.Ed. 538 (1890). See also Sanders v. Armour Fertilizer Works, 292 U.S. 190, 54 S.Ct. 677, 78 L.Ed. 1206 (1934)
 
 
 [5]
 See Earle v. Com. of Pennsylvania, 178 U.S. 449, 20 S.Ct. 915, 44 L.Ed. 1146 (1900); Grocery Supply, Inc. v. McKinley Park Servs., Inc., 128 F.Supp. 694, 15 Alaska 469, (1955). But cf. Lewis, Roca, Scoville & Beauchamp v. Inland Empire Ins. Co., 259 F.2d 318 (10th Cir. 1958); Lewis, Roca, Scoville & Beauchamp v. Christenson, 263 F.2d 536 (10th Cir. 1959); Collins v. Pacific Underwriters, Inc., 206 F.Supp. 727 (D.Alaska1962); Herman v. Siney, 190 A.2d 650 (D.C.App.1963)
 
 
 [6]
 The failure of the sheriff to obtain actual possession within 90 days of service of the attachment warrant does not necessarily mean that any lien or priority rights established in C&H's favor by the attachment would be voided. As stated in N.Y. CPLR 6214(e), the attachment does not become void if a proceeding to compel payment has been begun, see note 1 supra, or if the court has extended the 90-day period. Here the latter has happened, at least through 20 days after entry of the order vacating the stay. Even apart from the state court's extension of time, if use of the methods available for enforcement of the attachment were blocked by a stay granted by a state court, and presumably by a federal court, as was the case here, the attachment would not become void so long as the stay remained in effect. See Globe Indemn. Co. v. Puget Sound Co., 149 F.2d 805, 809 (2d Cir. 1945). It might be a different story if the stay were not so readily interpreted as barring all proceedings in aid of the attachment, as well as the attachment itself. Cf. Carroll v. Manufacturers Trust Co., 202 F.2d 714, 715 (2d Cir. 1953); Lev v. Velaise, 82 N.Y.S.2d 284, 286 (Sup.Ct.), rev'd without opinion, 274 App.Div. 923, 924, 84 N.Y.S.2d 906 (1st Dep't 1948); Metallo-Chemical Corp. v. Banque Transatlantique Societe Anonyme, 188 Misc. 596, 599, 67 N.Y.S.2d 186, 189 (N.Y.City Ct. 1946). See generally 7 Weinstein, Korn & Miller, New York Civil Practice, $15 & n. 49 (1965)