560 F.2d 561
 Fed. Sec. L. Rep. P 96,120
SECURITIES AND EXCHANGE COMMISSION
v.
INVESTORS SECURITY CORP. and William H. Brown.
SECURITIES AND EXCHANGE COMMISSION
v.
INVESTORS SECURITY LEASING CORPORATION, William H. Brown,
Dale R. McDonald, and William J. Lynam.
Appeal of EQUIBANK, N.A., in No. 76-2133.
Appeal of Hilliard KREIMER, Receiver for Investors Security
Leasing Corporation, in No. 76-2134.
 Nos. 76-2133, 76-2134.
 United States Court of Appeals,
Third Circuit.
 Argued March 31, 1977.
Decided July 26, 1977.
 
 Hurd Baruch of Winston & Strawn, Washington, D.C., for appellant in No. 76-2133.
 Alan Z. Lefkowitz, Raymond M. Komichak of Kaplan Finkel Lefkowitz Roth & Ostrow, Pittsburgh, Pa., for appellant in No. 76-2134.
 George F. Bingham, Washington, D.C., for Securities Investor Protection Corp.
 John L. Laubach, Jr., of Stevens, Clark, Laubach & Semple, Pittsburgh, Pa., for Thomas P. Ravis, Trustee for the Liquidation of the Business of Investors Sec. Corp.
 Louis P. Vitti of Markovitz & Vitti, Pittsburgh, Pa., for intervenors, James W. and Helen I. Thompson.
 Before GIBBONS, VAN DUSEN and GARTH, Circuit Judges.
 OPINION OF THE COURT
 VAN DUSEN, Circuit Judge.
 
 
 1
 These appeals arise from a June 17, 1976, district court order entered in a proceeding ancillary to a Securities and Exchange Commission (SEC) action brought to permanently enjoin the Investors Security Leasing Corporation (ISLC),[1] its president, Dale R. McDonald, its vice-president, William H. Brown, and its treasurer, William J. Lynam, from violating the registration and antifraud provisions of the Securities Act of 1933 (15 U.S.C. § 77a et seq.), the Securities Exchange Act of 1934 (15 U.S.C. § 78a et seq.), and the rules promulgated thereunder. The ancillary proceeding against Equibank was brought by the court-appointed receiver for ISLC to recover for the corporation certain securities which had been hypothecated to William H. Brown, and pledged by him to Equibank as collateral for personal debts. The district court[2] held that ISLC had no right to the securities involved, since the owners had hypothecated them to Brown personally, rather than to Brown as an agent of ISLC, and that Equibank also had no right to the securities because it was not a bona fide purchaser and, therefore, was subject to the defenses of the original owners of the instruments. The court thereupon ordered Equibank to return the instruments to those original owners. Both Equibank and the receiver for ISLC appeal.
 
 
 2
 We will affirm the June 17, 1976, judgment of the district court insofar as it determined that the receiver for ISLC had no interest in the securities involved here, and vacate that judgment insofar as it determined that Equibank was not a bona fide purchaser as to the investments described in the second and fourth paragraphs of the district court order of June 17, 1976 (see note 7 below). Because the owners of the investments involved in these appeals were neither parties in the district court nor in this court (see pages 568-569 below), we have no jurisdiction to determine the ownership of such investments.
 
 I.
 
 3
 In 1970, William H. Brown began a pattern of personal borrowing from Equibank (then known as Western Pennsylvania National Bank). In February 1970, the Monroeville, Pennsylvania, branch office of Equibank made a personal loan to Brown and Jane Brown (his wife) collateralized by their own securities, securities belonging to Albert and Malkie Debo (Jane Brown's parents), and securities belonging to Margaret Brant (Brown's aunt). The Monroeville branch continued to extend credit to Brown, and by December 1971 his personal indebtedness at that office had reached $45,000.00. In addition to those borrowings, however, Brown had also obtained personal credit of $37,000.00 at the Pittsburgh branch office of Equibank in September 1971.[3] As collateral for that loan Brown had proffered corporate debentures with a face value of $56,000.00 registered in the names of James and Helen Thompson, and accompanied by the following document:
 
 
 4
 "I, James W. Thompson, hereby authorize William H. Brown of 5710 King of Arms Drive, Gibsonia, Pennsylvania 15044 to pledge and hypothecate any and all of the securities listed below for his use or for any business purpose he sees fit. In return for this I understand that I am to receive $250 per month until the expiration date of November 1, 1972, with the first payment to commence on November 1, 1971 with interest to be based on the fair market value of that date.
 
 
 5
 "This agreement has been entered in the presence of Genevieve Ludwiczak, Dale R. McDonald, William H. Brown and William Lynam this 8th day of September, 197 1.
 
 
 6
 "It is further agreed that at the expiration of this agreement both parties being satisfied the option to continue same agreement shall be renewed.
 
 
 7
 (Certificate numbers and security descriptions omitted.)
 
 
 8
 Before it would accept those bonds as collateral, however, the bank required that its standard form "Letter of Consent to Pledge and Hypothecation" be executed. Soon thereafter Brown did produce that highly technical document, signed by the Thompsons, which authorized him to "pledge or hypothecate . . . for (his) . . . own account or otherwise the collateral."[4] The Thompsons also agreed to open a checking account at Equibank in which the interest received on their coupon debentures pledged by Brown would be accumulated. For that purpose they also signed a signature card (Equibank Exhibit 22).
 
 
 9
 Those, however, were not isolated transactions. Brown maintained an ongoing banking relationship with Equibank, during the course of which the size of his personal debt and the nature of the collateral which secured it fluctuated.
 
 
 10
 In addition to the Debo and Thompson securities already mentioned, Brown hypothecated those of many others. On December 29, 1971 the date on which Brown's Monroeville branch loan was consolidated with the loan at the Pittsburgh office Equibank received a signed copy of its standard form letter of consent from Valetta Beltz (Equibank Exhibit 6), along with the following letter of agreement dated September 17, 1971:
 
 
 11
 "I, Valetta B. Beltz, hereby authorize William H. Brown on 5710 King of Arms Drive, Gibsonia, Pennsylvania 15044, to pledge and hypothecate any or all of the securities listed below for his use or for any business purpose he sees fit. In return for this I understand that I am to receive $75.00 per month, with the first payment to commence on November 1, 1971.
 
 
 12
 "This agreement has been entered in the presence of Dale R. McDonald and William J. Lynam this 17th day of Sept. 1971.
 
 
 13
 "It is further agreed that this agreement shall continue until both parties decide to terminate the agreement.
 
 
 14
 (Certificate numbers and security descriptions omitted.)
 
 
 15
 In November 1972, Jane Brown advanced more stock, and in January 1972, $15,000.00 of Atlas Credit Corp. Debentures, which had been supplied by the Thompsons but had become worthless as a result of the company's insolvency, were replaced by a like amount of Valley Township Authority bearer bonds, also supplied by the Thompsons. Those securities were later withdrawn by Brown.
 
 
 16
 Equibank also accepted as additional collateral stocks registered to Mrs. Francis Calig in September 1973, although the Equibank standard form which authorized Brown to pledge or hypothecate those instruments contained no recital of consideration for their use and was not accompanied by any other documents as were the others which he had supplied.
 
 
 17
 In October 1973, Equibank accepted a Brownsville Municipal Authority Sewer Revenue bearer bond with a face value of $5,000.00 as additional collateral, and the bank accepted another in October 1974. Brown treated both Brownsville securities as his own property to the point of authorizing Equibank to deposit the proceeds of bond coupons in his personal checking account. Equibank thus had no way of knowing that, in fact, those bearer bonds had been "leased" from the Thompsons by Brown, just as the other Thompson securities had been. As noted, the Thompsons had a checking account at Equibank for the very purpose of accumulating the interest from their securities (Receiver Exhibit 1 at 522a-23a).
 
 
 18
 At the time Brown defaulted on his personal loans with Equibank in 1975, he owed approximately $55,000.00 in principal and unpaid interest.
 
 
 19
 On October 10, 1975, the SEC filed suit (Civil No. 75-1304, W.D.Pa.) to obtain a permanent injunction restraining ISLC, Brown, Dale R. McDonald, William J. Lynam, their officers, directors, agents, servants, employees, successors and assigns from engaging in fraudulent and misleading practices.
 
 
 20
 Upon motion of the SEC, the district court issued a temporary restraining order, froze the assets of ISLC, and appointed a temporary receiver. On October 13, 1975, the court made the restraining order permanent and placed the assets of ISLC under the control of the court, to be administered by a receiver with plenary power including the power to commence suit on behalf of ISLC to collect all assets of the corporation for the benefit of shareholders and creditors (Document No. 3 in Civil No. 75-1304 (W.D.Pa.)).
 
 
 21
 On December 1, 1975, Equibank sent the following letter to the ISLC receiver:
 
 
 22
 "We are a creditor of William H. Brown in the principal amount of $47,946.55 (plus accrued interest through November 30, 1975 of $3,512.97), arising out of a personal loan extended in 1971. This loan has always been maintained on our books separately from the loans extended to Investors Security Corporation, and it has always been separately collateralized. As collateral for the personal loan, we are holding securities hypothecated by various third parties at its inception.
 
 
 23
 "This loan is presently in default and we have notified Mr. Brown that we intend to liquidate the collateral securing this loan. On or about December 10, 1975, we intend to liquidate the securities hypothecated by James W. Thompson and Helen I. Thompson, Mrs. Francis Calig, and Valetta B. Beltz, to the extent necessary to satisfy Mr. Brown's indebtedness to us.
 
 
 24
 "We have been advised by counsel that the sale of said securities is not precluded either by the Orders issued by Judges Snyder and Gibson in Case No. 75-1036 or by the Orders issued by Judge Snyder in Case No. 75-1304. The securities to be sold are not now and have never been assets of Investors Security Corporation or Investors Security Leasing Corporation. Furthermore, our position is that of a secured creditor of Mr. Brown, and not that of an 'agent, servant, employee, successor or assign.' "
 
 
 25
 In addition to the securities mentioned in that letter, Equibank also claims the right to hold as collateral securities originally owned by Jane Brown and Malkie Debo. On December 10, 1975, the receiver petitioned the district court to enjoin the proposed sale of securities by Equibank.
 
 
 26
 The receiver asserted, at a hearing held on January 5, 1976, that the individuals whose securities had been hypothecated were customers of ISLC, that the securities in question had been delivered by their holders to ISLC, and that those instruments had been unlawfully and without the authority of either ISLC or their owners pledged to Equibank as collateral for personal debts of William H. Brown. The receiver claimed that Equibank:
 
 
 27
 ". . . as pledgee of the Securities in personal loan transactions with Brown, accepted the same in bad faith and, participated in conversion of the Securities under circumstances in which it knew or should have known of adverse claims in and to the Securities and further, materially aided and abetted in the fraudulent scheme."
 
 
 28
 (Petition to Amend Petition to Enjoin Equibank, N.A., Document No. 20 in Civil No. 75-1304, supra ), and requested that the securities be turned over to him as guardian of the assets of ISLC. The district court granted a preliminary injunction on the sale, transfer, liquidation, or other disposition of the securities held by Equibank as collateral for the obligations of William H. Brown.
 
 
 29
 However, in the decision which we now review, SEC v. Investors Security Corporation and William H. Brown, 415 F.Supp. 745 (W.D.Pa.1976), the district court decided that neither ISLC nor Equibank had any right to the securities involved in this appeal and, despite the fact that only the ISLC receiver and Equibank were before the court, ordered that they be returned to their original owners. As to Equibank, the district court found that:
 
 
 30
 "Under (Uniform Commercial Code) Section 8-304 . . . the mere fact that the stocks appeared in the name of third parties did not put Equibank on notice of the defect, but we must still examine the 'good faith' of Equibank. In that regard, we have come to the conclusion that Equibank's failure to make inquiry in this case arose from the suspicion . . . that Mr. Brown was using collateral in a fraudulent manner. From all the facts and circumstances which were known to Equibank, inquiry was required, and that inquiry was never made. Thus, under Section 8-315, a person against whom the transfer of a security is wrongful, may then reclaim possession of that security.
 
 
 31
 "The sum and substance of all of the above is that the Bank is not presently the holder in due course of any of these securities.
 
 
 32
 "We believe the record is clear that the Bank exercised bad faith and was not a holder in due course. . . ."
 
 
 33
 415 F.Supp. at 756-760. The district court also determined that ISLC had no interest in the securities, since:
 
 
 34
 ". . . the circumstances of all the hypothecations indicate that the owners were 'renting out' their securities to Brown, or other individuals. From all the evidence it is apparent that ISC and ISLC were used by Brown to further his own interests. It is true that in many instances letters were received by the owners of the securities indicating receipt of the stock by ISLC. The record shows that the stock was passed through the books of ISC or ISLC and the stock then disappeared by virtue of Brown's actions when he took the securities to Equibank and borrowed personally with the stock as collateral.
 
 
 35
 "Here, ISC and ISLC were nothing more than tools of transfer used by Brown . . . . Thus, the owners may recover the original or new security unless the holder is a bona fide purchaser."
 
 
 36
 415 F.Supp. at 759-760.
 
 
 37
 The court granted Equibank's motion for a stay of execution of the judgment requiring return of the securities to their original owners, pending filing of its notice of appeal. Equibank filed notice of appeal on July 16, 1976, and the ISLC receiver did the same on July 19, 1976.
 
 
 38
 On August 4, 1976, however, counsel for James and Helen Thompson, who had not theretofore been involved in the proceedings other than as witnesses, served notice on all counsel of his intention to move for intervention, which neither the receiver nor counsel for Equibank opposed. The district court allowed the Thompsons to intervene on August 18, 1976 approximately one month after the notices of appeal had been filed.
 
 II.
 
 39
 Jurisdiction over the original action brought by the Securities and Exchange Commission to enjoin ISLC was conferred on the district court by § 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa. While the 1934 Act makes no provision for the appointment of receivers (3 Loss, Securities Regulation 1510 (2d ed. 1961); cf. SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1105 (2d Cir. 1972)), § 28 of the statute, 15 U.S.C. § 78bb(a), contains the following language:
 
 
 40
 "The rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity . . . ."
 
 
 41
 And as the Court of Appeals for the Second Circuit has observed:
 
 
 42
 "It is now well established that Section 22(a) of the 1933 Act, 15 U.S.C. § 77v(a) (1970), and Section 27 of the 1934 Act, 15 U.S.C. § 78aa (1970), confer general equity powers upon the district courts. SEC v. Texas Gulf Sulphur Co., supra, 446 F.2d at 1307 ((2 Cir.), cert. denied, 404 U.S. 1005, 92 S.Ct. 561, 30 L.Ed.2d 558 (1971)); SEC v. S & P National Corporation, 360 F.2d 741, 750 (2 Cir. 1966); Lankenau v. Coggeshall & Hicks, 350 F.2d 61, 63 (2 Cir. 1965); Esbitt v. Dutch-American Mercantile Corporation, 335 F.2d 141, 143 (2 Cir. 1964). Once the equity jurisdiction of the district court has been properly invoked by a showing of a securities law violation, the court possesses the necessary power to fashion an appropriate remedy. Thus, while neither the 1933 nor 1934 Acts specifically authorize the ancillary relief granted in this case, '(i)t is for the federal courts to adjust their remedies so as to grant the necessary relief where federally secured rights are invaded.' J. I. Case Co. v. Borak, 377 U.S. 426, 433 (84 S.Ct. 1555, 12 L.Ed.2d 423) (1964). Accord, Deckert v. Independence Corporation, 311 U.S. 282, 288 (61 S.Ct. 229, 85 L.Ed. 189) (1940). Moreover, as the Supreme Court said in Mills v. Electric Auto-Lite Co., 396 U.S. 375, 391 (90 S.Ct. 616, 24 L.Ed.2d 593) (1970): '(W)e cannot fairly infer from the Securities Exchange Act of 1934 a purpose to circumscribe the courts' power to grant appropriate remedies.'
 
 
 43
 "Despite the absence of explicit statutory authority . . . we repeatedly have upheld the appointment of trustees or receivers to effectuate the purposes of the federal securities laws. SEC v. S & P National Corporation, 360 F.2d 741, 750 (2 Cir. 1966); Lankenau v. Coggeshall & Hicks, 350 F.2d 61, 63 (2 Cir. 1965); Esbitt v. Dutch-American Mercantile Corporation, 335 F.2d 141, 143 (2 Cir. 1964)."
 
 
 44
 SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1103-05 (2d Cir. 1972).
 
 
 45
 We agree that the federal courts retain their equitable powers under the 1934 Act, and find that the appointment of a receiver was an appropriate exercise of the power and discretion of the district court in this case. After taking control of the assets of ISLC, the court clearly required the assistance of, and properly exercised its power to appoint, a receiver " with plenary power to collect the assets of Investors Security Leasing Corporation, including the (power to commence and prosecute) to judgment . . . all causes of action in favor of Investors Security Leasing Corporation for the benefit of its stockholders and creditors . . . ." (Document 9 in Civil No. 75-1304, supra ). As is apparent, that district court order empowered the receiver, by its terms, to seek to enjoin Equibank from disposing of securities which the receiver believed to be the property of the leasing corporation, in view of the position of the receiver that Equibank had not acted in good faith and without notice of adverse claims in purchasing certain securities which had been obtained by William H. Brown. Because the receiver acted within the powers delegated by the court to accomplish ends sought by the underlying action, protection of ISLC investors and creditors, the district court had jurisdiction over the proceeding against Equibank as an ancillary matter.[5]
 
 
 46
 However, the district court awarded the securities here involved to their original owners, rather than to either the receiver, who claimed them for shareholders and creditors of ISLC, or Equibank, which claimed them as a bona fide purchaser. Because the owners of the investments were neither parties in the district court nor in this court (see below), neither the district court nor this court has the jurisdiction to determine the ownership of such investments.
 
 
 47
 Having determined that the district court had the power to appoint a receiver and had jurisdiction over the ancillary proceeding to enjoin Equibank's proposed disposition of these securities and recover them for ISLC, we proceed to the last remaining jurisdictional issue: intervention by the Thompsons after notice of appeal had been filed.
 
 It is well settled that the
 
 48
 "(f)iling of a notice of appeal immediately transfers jurisdiction of a case from the District Court to the Court of Appeals. Hovey v. McDonald, 109 U.S. 150, 157, 3 S.Ct. 136, 27 L.Ed. 888 (1883); Plant Economy, Inc. v. Mirror Insulation Co., 308 F.2d 275, 276-77 (3d Cir. 1962). During the pendency of the appeal the District Court retains only the limited authority to take any steps that will assist the Court of Appeals in its determination."
 
 
 49
 United States v. Lafko, 520 F.2d 622, 627 (3d Cir. 1975). A district court may, of course, continue to take action in a case with leave from the appellate court. Sumida v. Yumen, 409 F.2d 654, 656 (9th Cir. 1969). In this case, however, the district court had neither power nor permission to grant the Thompsons permission to intervene. Therefore, while we have considered the contentions raised by the Thompsons, their claims are not properly before this court at this time.
 
 III.
 
 50
 The receiver attempts to recover the securities involved here as assets of ISLC which were wrongly taken. He appeals the district court determination that ISLC was not entitled to those instruments because it was not, as the receiver claimed, the authorized beneficiary of the stock powers and hypothecation agreements executed by the owners of the securities. However, as the district court noted in the portion of its opinion quoted at page 566 above, although Brown may have used the names or letterheads of ISC or ISLC to solicit securities, those instruments were hypothecated to him personally "for his own use or otherwise," or, as one such agreement authorized, "for any business purpose he sees fit." Brown, of course, employed those instruments entirely for his own benefit as collateral for personal loans. Therefore, while, as the district court noted, ISC and ISLC may indeed have been used by Brown, neither entity ever acquired the use of or right to these instruments. The ruling of the district court in this regard will be affirmed.[6]
 
 IV.
 
 51
 Having determined that the receiver had no standing to contest the bona fide purchaser status of Equibank in view of the district court's determination that ISLC had no interest in these investments, and no other parties having been before the court, the second and fourth paragraphs of the district court order of June 17, 1976 (62a) will be vacated.[7] Also, the August 18, 1976, order, granting the Thompsons' motion to intervene, will be vacated for lack of jurisdiction of the district court at the time that order was entered (see page 568 above).
 
 
 
 [1]
 In order to show the full context of the proceeding against the Investors Security Leasing Corporation, which gave rise to the ancillary proceeding by the receiver of ISLC against Equibank the history of SEC v. Investors Security Corp., 415 F.Supp. 745 (W.D.Pa.1976) (with which the SEC proceeding against ISLC was consolidated), is set forth briefly here
 On August 15, 1975, the SEC sought a temporary restraining order and a permanent injunction against the Investors Security Corporation (ISC) and its president, William H. Brown, for violation of the Securities Exchange Act of 1934. ISC had been registered with the SEC pursuant to provisions of § 15(b) of the Exchange Act, 15 U.S.C. § 78o (b), as a broker dealer since May 18, 1966. It was a member of the PBW Stock Exchange, Inc. (PBW), a national securities exchange registered with the Commission pursuant to § 6 of the Exchange Act, 15 U.S.C. § 78f.
 The complaint charged, inter alia, that ISC and Brown had engaged in securities transactions, had induced and had attempted to induce the purchase and sale of securities at a time when its aggregate indebtedness exceeded its net capital by more than the maximum permitted; that ISC had failed to maintain accurate records, ledgers, etc.; and that ISC had failed to give notice that its net capital was less than the minimum required. On August 18, 1975, a permanent injunction was issued, prohibiting Brown or any other person on behalf of ISC from committing future violations of the 1934 Act, and the regulations thereunder. The defendants were directed to employ a special fiscal agent to review the accounts of customers of ISC for accuracy. The court retained jurisdiction for further action.
 On September 15, 1975, the Securities Investor Protection Corporation (SIPC), a non-profit corporation created by the Securities Investor Protection Act of 1970 (15 U.S.C. §§ 78aaa et seq.), in which ISC holds membership, filed a Memorandum and Application for Protective Adjudication against ISC to declare ISC's customers to be in need of the Act's protection since ISC, as a broker-dealer, was in danger of failing to meet its obligations. Such authority is given by 15 U.S.C. § 78eee(a)(2), which provides:
 "Action by SIPC. If SIPC determines that any member has failed or is in danger of failing to meet its obligations to customers and that there exists one or more of the conditions specified in subsection (b)(1)(A) of this section, SIPC, upon notice to any such member, may apply to any court of competent jurisdiction specified in section 78aa or 78u(e) of this title for a decree adjudicating that customers of such member are in need of the protection provided by this chapter."
 SIPC, in addition, asked the court to appoint a trustee for the liquidation of ISC; to enjoin ISC's creditors from enforcing non-preferential liens and pledges against ISC, or from exercising set-off of debts under § 68 of the Bankruptcy Act, and to enjoin the disposal or withdrawal of any assets or property of ISC, as is specifically authorized by 15 U.S.C. §§ 78eee(b)(2) and (3) and 78fff(c)(1). Pursuant to 15 U.S.C. § 78eee(a)(3)(A), the actions of the SEC and SIPC involving ISC were consolidated.
 After a hearing, SIPC's application was granted and an order entered enjoining all creditors of ISC, other persons, firms, and corporations from commencing, prosecuting, continuing, or enforcing any suit or action or proceeding of any kind against ISC or the trustee without obtaining an order of the court. ISC's trustee thereafter filed an application and received an order directing the publication of notice of the proceedings under the 1970 Act against ISC and fixing the time within which to file claims against the corporation and for consideration of related matters.
 The receiver for ISLC filed the Notice of Appeal docketed at No. 76-2134, "specifically from that portion of the Order requiring Equibank, N.A. to return to the registered stock owners all of the collateral held by it."
 
 
 [2]
 SEC v. Investors Security Corporation and William H. Brown, SEC v. Investors Security Leasing Corporation, et al., 415 F.Supp. 745 (W.D.Pa.1976)
 
 
 [3]
 In December 1971, Brown's personal loans and collateral held by the Monroeville branch office of Equibank were consolidated with those at the Pittsburgh branch. On December 29, 1971, Brown's indebtedness totalled $77,500.00, which was collateralized by hypothecated securities valued at $119,400.00
 
 
 [4]
 That collateral consisted of: $10,000.00 Ritter Financial Corp. Capital Debentures; $15,000.00 Atlas Credit Corp. Capital Debentures; $16,000.00 Sheraton Corp. of America Capital Income Bonds; $15,000.00 Signet Corp. Capital Debentures (Equibank Exhibit 4)
 
 
 [5]
 As the court noted in Tcherepnin v. Franz, 485 F.2d 1251, 1255-56 (7th Cir. 1973):
 "So long as an action commenced by a court appointed receiver seeks 'to accomplish the ends sought and directed by the suit in which the appointment was made, such action or suit is regarded as ancillary so far as jurisdiction of the . . . court of the United States is concerned.' "
 (Footnote omitted.)
 Accord, Esbitt v. Dutch-American Mercantile Corp., 335 F.2d 141, 143 (2d Cir. 1964).
 
 
 [6]
 The contentions of the receiver for ISLC at Civil No. 76-2134 (see note 1 above) that the case should be remanded to the district court for entry of an order directing that the collateral held by Equibank be turned over to him to be held pending further order of that court is rejected
 
 
 [7]
 The second and fourth paragraphs of the June 17, 1976, order read as follows:
 "It Is Further Ordered, Adjudged and Decreed that the Injunction heretofore issued against Equibank, N.A., by which Equibank was enjoined from selling, transferring, or otherwise disposing of the securities pledged as collateral for obligations of William H. Brown, be and the same is hereby made permanent as therein set forth, except that the said Equibank, N.A. shall return to the registered stock owners all of the collateral held by it and all hypothecation agreements and stock powers related thereto shall be stamped 'Cancelled'. The stock is to be returned to such registered owners within ten (10) days of the date of this Order.
 "It Is Further Ordered, Adjudged and Decreed that the Brownsville Municipal Bonds be returned to James W. Thompson within ten (10) days of the date of this Order."
 Neither the notice of appeal filed by Equibank (Document 28 in Civil No. 75-1036) nor the notice of appeal filed by the receiver for ISLC (Document 30 in Civil No. 75-1036) challenges the third paragraph in the order entered by the district court on June 17, 1976.