SECURITIES AND EXCHANGE COMMISSION,

James W. Thompson and Helen I. Thompson, Intervening Plaintiffs,

William L. Dutter and Patricia R. Dutter, Intervening Plaintiffs,

Patricia R. Dutter, Custodian for W. Dean Dutter, Intervening Plaintiff,

v.

INVESTORS SECURITY LEASING CORPORATION, William H. Brown, Dale R. McDonald, William J. Lynam,

Hillard Kreimer, Receiver to collect assets of Investors Security Leasing Corporation

v.

FIRST NATIONAL BANK AND TRUST CO. OF WASHINGTON, PA.

and

Equibank N.A.,

Laurel National Bank,

United States National Bank, Johnstown, Pennsylvania,

Hillard Kreimer, Receiver for Investors Security Leasing Corporation, Appellant in No. 78–2111.

United States National Bank, Johnstown, Pennsylvania, Appellant in No. 78–2112.

Nos. 78–2111, 78–2112.

United States Court of Appeals, Third Circuit.

Argued Nov. 13, 1979.

Decided Dec. 6, 1979.

Judith R. Cohn (Argued), Diane J. Sigmund, Wolf, Block, Schorr & Solis-Cohen, Philadelphia, Pa., for appellant and cross-appellee United States Nat. Bank; Marlin B. Stephens, Johnstown, Pa., of counsel.

Alan Z. Lefkowitz (Argued), Kaplan, Finkel, Lefkowitz, Roth & Ostrow, Pittsburgh, Pa., for appellee and cross-appellant Hillard Kreimer, receiver.

Before SEITZ, Chief Judge, ALDISERT, Circuit Judge, and HUYETT, District Judge.*

## OPINION OF THE COURT

PER CURIAM:

These are appeals by United States National Bank (the Bank) and Hillard Kreimer, the receiver of Investors Security Leasing Corp. (ISLC), challenging a final order of the district court requiring the Bank to return to the "owners" the proceeds from the sale of stock found to have been used as collateral for loans to officers of ISLC.

### I.

This court has once before considered the particular issues here in an earlier appeal by the receiver involving a different bank. *See Securities and Exchange Commission v. Investors Security Corp.*, 560 F.2d 561 (3d Cir. 1977) (*Equibank*).[1] Because *Equibank* gives a full presentation of the problems leading up to the enforcement action against ISLC, we detail only those events that are relevant to the instant appeal.

The controversy in this case centers around the use of stock of the customers of ISLC by ISLC officers as collateral for allegedly personal loans. The receiver initiated these proceedings to recover the proceeds from the Bank's sale of the stock of three ISLC customers. The first owners, the Sensors, had transferred their account to Investors Security Corp. (ISC), *see* note 1 *supra*, in the fall of 1971. Soon after that, Dale R. McDonald, the president of ISLC, suggested to the Sensors that they turn the stock over to him in return for monthly interest payments. They testified that McDonald told them the stock could not be sold without their consent. In December of 1971, the Sensors signed a letter authorizing

William H. Brown, the vice president of ISLC, to "pledge or hypothecate" the shares "for his use or any business purpose he sees fit." There is no evidence that the Sensors actually met Brown or William J. Lynam, the treasurer of ISLC. The Sensors received interest payments drawn either on Brown's personal account or the account of ISLC. In addition, they received some correspondence concerning the stock on ISLC stationery.

Similar events took place with respect to the McGearys. In the fall of 1971, McDonald and Lynam visited Mr. McGeary and persuaded him to turn over stock to them in return for interest payments. They gave him a receipt for the stock with the notation "Investors Security Co." on the bottom. The McGearys received the interest payments on checks drawn on the account of ISLC.

Lynam and McDonald took the stock to the Bank and used it as collateral for loans. They presented to the Bank hypothecation agreements signed by the Sensors and the McGearys. The agreements purported to give permission for use of the stock as collateral. At trial, both the Sensors and the McGearys denied ever signing the hypothecation agreements. In 1975, upon default on the loans, the Bank sold the stock.

The district court first held that Lynam and McDonald had secured the loans for their own personal use. It found that the use of ISLC stationery and checks and the possession of the stock by ISLC were not sufficient to give ISLC a property interest in the stock. It therefore held that the receiver could not recover the proceeds of the stock sales as part of the property of ISLC. The district court next held that because of the fraudulent events surrounding the obtaining of the stock by the offi-

---

* Honorable Daniel H. Huyett, 3rd, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. The *Equibank* case involved Investors Security Corp., a company related to ISLC. The two apparently have the same individuals as offi-

cers, and the first case involved the same type of conduct present here. In this case, the officers apparently did not reveal to the customers the relationship of the two companies, and the record reveals that the officers used the companies interchangeably.

cers, the Bank must return the stock to the Sensors and McGearys.[2]

## II.

The first issue is the propriety of the district court's order that the receiver may not recover the stock. In *Equibank*, we upheld a similar ruling involving the same officers but with a different bank and different customers. The crux of the inquiry is whether the stock can be properly classified as the property of ISLC. Here, as in *Equibank*, the district court held that possession of the stock by ISLC and use of its name by the officers could not obscure the fact that the primary reason the officers wanted the stock was for use as collateral for personal loans. The theory, which we approved in *Equibank*, was that use of the company as a front for the personal ends of the officers would not transform the stock into the property of the company. *See* 560 F.2d at 568.

The receiver seeks to distinguish *Equibank* on the ground that here the officers forged the hypothecation agreements while in *Equibank* the owners of the stock actually signed the agreements themselves. We fail to see, however, how this can amount to a distinction requiring a different result. The hypothecation agreements in the two cases are identical in that both give authority to use the stock for any use the officer sees fit. Moreover, the Sensors here actually signed a letter containing the same language as the hypothecation agreements in *Equibank*.

In addition, the argument of the receiver misreads the reasoning of *Equibank*. The crux of that case was that the officers wanted the loans for their own personal use, not that of the company, and thus the collateral could not be considered the property of ISLC. The receiver does not explain how the manner in which the officers obtained the authorization to use the stock as collateral can make the stock the property of ISLC. That the officers forged the agreements in no way diminishes the fact that the officers used the stock as collateral for personal loans. Because the two cases are in all other relevant aspects the same, the record supports the holding of the district court. Here, as in *Equibank*, the officers used the loans for their own personal ends, which does not give ISLC any interest in the stock.

We affirm the district court's holding that the receiver may not recover the proceeds of the sale of the stock by the Bank.

## III.

The next question is whether the district court properly ordered the proceeds of the sales turned over to the owners of the stock. Both the receiver and the Bank argue that the district court was without jurisdiction to rule on the rights of the owners vis-a-vis the Bank because the owners were not properly made parties to the proceedings.

In *Equibank*, the district court also ordered the return of the stock in question to the owners. We held that the court was without jurisdiction to consider the claims of the owners because they did not move to intervene until after notice of appeal was filed. *See* 560 F.2d at 568.

In this case, prior to the hearing, the district court sent out a form to all the owners. It was captioned "Proof of Claim;" in effect, it asked the owners if they wanted to claim their stock and asked them to return the form to the district court. As to those owners who returned the form and appeared as witnesses at the hearing, the district court held they had "in effect" intervened, distinguished *Equibank* on that ground, and ordered the Bank to return the proceeds of the stock sales to them.

Federal Rule of Civil Procedure 24(c) requires an intervening party to "serve a motion . . . upon the parties as provided in Rule 5." The owners here did not

---

2. The third owners, the Hildebrands, apparently did not appear at the hearing. Thus the district court did not order their stock returned to them.

comply with this requirement, which is designed to ensure that parties have advance notice of the claims that an intervenor plans to make. The wisdom of such a requirement is illustrated by this case. Although the district court sent a copy of the "Proof of Claim" form to the parties, the form in no way indicates that a returned form would be treated as a motion to intervene. Indeed, the district court did not so rule until after the hearing. Moreover, the parties did not receive a copy of any of the completed forms that were returned to the district court. Thus the parties had absolutely no way to know the claims of any of the individual owners.

Because the requirements of rule 24(c) were not complied with, the owners were not proper parties in the district court. *See* 3B Moore's Federal Practice ¶ 24.12[1], at 24–502 to –503 (1979). Accordingly, the court was without jurisdiction to rule on their claims, and we reverse that portion of its order requiring the Bank to return the proceeds of the stock sales to the owners. This holding in no way impairs the right of the owners to attempt to recover such proceeds in proper proceedings.

### IV.

We will affirm that portion of the district court's judgment holding that the receiver may not recover the proceeds of the sale of the collateral from the Bank. We will reverse that portion of its judgment requiring the Bank to return the proceeds to the owners of the stock in question.