TATE, Circuit Judge:
 

 This interlocutory appeal
 
 [1]
 
 from district court orders granting a preliminary injunction and appointing a receiver arises from a civil enforcement action brought by the Securities and Exchange Commission (SEC) to enjoin the purchase and sale of securities by the defendants because of certain alleged securities-law violations. On their appeal, the defendants, First Financial Group of Texas, Inc. (First Financial), and its officers, Howton and Reynolds, contend, inter alia, that the requisite scienter (knowing or intentional misconduct) was not proved. First Financial also contends that the district court lacked jurisdiction to appoint a temporary receiver because bankruptcy pro-' ceedings had been instituted against First Financial at the time the receiver was appointed in this action. We affirm both district court orders as to First Financial, but we dismiss as moot the appeals by its codefendant officers, Howton and Reynolds.
 

 The Facts
 

 The SEC’s civil enforcement action is based upon statutory provisions making unlawful the offer or sale of securities through fraudulent schemes or manipulative or deceptive devices, including by the use of false or misleading statements of material fact.
 
 [2]
 
 In general outline, the scheme of operations alleged and proved was as follows: First Financial sold some nine million dollars in face value of securities to five institutions, with an agreement to repurchase them. The securities were supposed to be held in safekeeping by third parties until First Financial’s repurchase of them at a specified increase in value (equivalent to the payment of 11% interest per annum) at a specified time.
 
 [3]
 
 However, al
 
 *432
 
 though the purchasers paid the agreed price to First Financial, the securities were not in fact deposited for safekeeping, and First Financial defaulted in its obligation to repurchase them.
 

 Upon First Financial’s default under various obligations to repurchase the securities, the SEC brought this action to enjoin the defendants from further offering and selling them to the public. The suit also sought interlocutory relief, including a preliminary injunction and the appointment of a temporary receiver to take control of First Financial’s assets to prevent irreparable loss to investors and to protect their interests. Immediately prior to the hearing on the SEC’s motion for a preliminary injunction, First Financial (later joined by the codefendant officers) filed a motion to suppress evidence furnished to the SEC by a First Financial creditor, who allegedly conducted an illegal search of First Financial’s files pursuant to a writ of attachment. Over objection by all defendants, the district court proceeded with the hearing on the preliminary injunction, postponing decision on the motion to suppress.
 

 After hearing, based upon findings of fact and conclusions of law, the district court issued an order preliminarily enjoining all defendants from offering, purchasing, or selling packages of the specified securities in violation of the federal securities laws, and from disposing of assets and records of First Financial. The district court further enjoined the individual defendants from disposing of their personal assets beyond an amount more than $1,500 a week per individual defendant.
 

 Twelve days later, the district court issued an order appointing a temporary receiver for the defendant First Financial. This order was issued five days
 
 after
 
 an involuntary petition in bankruptcy had been filed against the defendant First Financial under the Bankruptcy Reform Act of 1978, 11 U.S.C. § 101 et seq.
 

 The Issues
 

 All defendants appeal from the order of preliminary injunction and allege as error: (1) the district court’s failure to require clear and convincing evidence of the defendants’ violation of the federal securities laws to support issuance of the preliminary injunction; (2) the district court’s failure to make specific factual findings of the defendants’ scienter and the absence of evidence to support such a finding; and (3) the district court’s refusal to rule on the motion to suppress prior to hearing and decision on the SEC’s motion for preliminary injunction. The defendant First Financial also appeals from the order appointing a temporary receiver and urges its reversal on the basis that the district court was without jurisdiction to appoint a receiver once an involuntary petition in bankruptcy had been filed against First Financial.
 

 I.
 

 The Order of Preliminary Injunction
 

 The SEC brought this civil enforcement action for injunctive relief
 
 [4]
 
 against the defendants, alleging their violation of section 17(a) of the 1933 Act, 15 U.S.C. § 77q(a); section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b-5,17 C.F.R. 240.10b-5, promulgated under the latter act.
 
 [5]
 
 The
 
 *433
 
 district court granted a preliminary injunction effective against all defendants, and it is from this order that all defendants appeal.
 

 The Motion to Dismiss the Howton and Reynolds Appeals
 

 The SEC has moved that we dismiss the appeals by the defendants Howton and Reynolds from the order of preliminary injunction because of the district court’s action in permanently enjoining them prior to our decision on appeal. We take judicial notice of Howton’s and Reynolds’ appeals from the permanent injunction entered against them which are presently before this circuit.
 
 [6]
 

 A preliminary injunction remains in effect until a final judgment is rendered. See 11 Wright & Miller, Federal Practice and Procedure, Civil §§ 2941 and 2947, at pp. 361 and 427 (1973). Once an order of permanent injunction is entered (as in the case of Howton and Reynolds), the order of preliminary injunction is merged with it, and appeal is proper only from the order of permanent injunction.
 
 Smith v. Illinois Bell Telephone Company,
 
 270 U.S. 587, 588-89, 46 S.Ct. 408, 409, 70 L.Ed. 747 (1926);
 
 Shaffer v. Carter,
 
 252 U.S. 37, 44, 40 S.Ct. 221, 222, 64 L.Ed. 445 (1920);
 
 Payne v. Fite,
 
 184 F.2d 977, 978 (5th Cir. 1950);
 
 Securities and Exchange Commission v. Okin,
 
 137 F.2d 862, 863 (2d Cir. 1943).
 

 We thus dismiss the appeals of How-ton and Reynolds from the order of preliminary injunction. Of course, on their appeal from the order of permanent injunction, the defendants will be able to obtain at least as broad a review as they could have obtained on appeal from the order of preliminary injunction. See
 
 United States v. City of Chicago,
 
 534 F.2d 708, 712 (7th Cir. 1976). See also
 
 Gloria Steamship Company v. Smith,
 
 376 F.2d 46, 47 (5th Cir. 1967) (all interlocutory orders are reviewable on appeal from the final decree); 11 Wright & Miller, Civil § 2962, p. 628 (1973). Our disposition, then, of the issues raised on this appeal will be made with reference only to First Financial’s appeal from the order of preliminary injunction and from the order appointing a temporary receiver.
 

 The Standard of Review
 

 The decision to grant preliminary injunctive relief will be reversed on appeal only if the district court abused its discretion, see
 
 Securities and Exchange Commission v. United Financial Group, Inc.,
 
 474 F.2d 354, 358 (9th Cir. 1973);
 
 Securities and Exchange Commission v. S & P National Corporation,
 
 360 F.2d 741, 749 (2d Cir.
 
 *434
 
 1966);
 
 Securities and Exchange Commission v. Keller Corporation,
 
 323 F.2d 397, 402 (7th Cir. 1963), or failed to apply the proper legal standard, see
 
 Securities and Exchange Commission v. Mize,
 
 615 F.2d 1046, 1051 (5th Cir. 1980); 11 Wright & Miller, Federal Practice and Procedure, Civil § 2962, pp. 633-38 (1973).
 

 Under section 20(b) of the 1933 Act, 15 U.S.C. § 77t(b) and section 21(d) of the 1934 Act, 15 U.S.C. § 78u(d), the test laid down for injunctive relief is whether or not “a proper showing” has been made by the SEC that there is a reasonable likelihood that the defendant is engaged or about to engage in practices that violate the federal securities laws.
 
 Aaron v. Securities and Exchange Commission,
 
 446 U.S. 680, 699, 100 S.Ct. 1945, 1957, 64 L.Ed.2d 611 (1980);
 
 Securities and Exchange Commission v. Mize, supra,
 
 615 F.2d at 1051;
 
 Securities and Exchange Commission v. Savoy Industries, Inc.,
 
 587 F.2d 1149, 1168 (D.C. Cir. 1978),
 
 cert. denied,
 
 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979); 3 Loss, Securities Regulation 1975, 1976-80 (2d ed. 1961). The latter showing is usually made with proof of past substantive violations that indicate a reasonable likelihood of future substantive violations. See
 
 Securities and Exchange Commission v. Savoy Industries, Inc., supra;
 
 3 Loss, Securities Regulation 1976 (2d ed. 1961).
 

 In the instant case, the defendant First Financial alleges that the district court erred as a matter of law in issuing the preliminary injunction (a) on a preponderance of the evidence standard of proof, and (b) without making specific findings of the defendant’s scienter (knowing or intentional misconduct) and in the absence of evidence supporting such a finding. First Financial additionally contends that the district court abused its discretion (c) in issuing the preliminary injunction prior to hearing and decision on the defendant’s motion to suppress.
 

 (a) The Standard of Proof
 

 First Financial argues that the district court erred in applying a lesser standard of proof than clear and convincing in judging the sufficiency of the evidence to support the issuance of the preliminary injunction. The question presented' on review, i. e., what is the appropriate standard of proof in SEC civil enforcement actions for preliminary injunctive relief under the antifraud provisions of the federal securities laws, has not been answered previously in this circuit.
 
 [7]
 
 We conclude that the proper standard of proof is the preponderance of the evidence.
 

 The standard of proof applied in a particular case serves to allocate between the litigants the risk of erroneous decision.
 
 Addington v. Texas,
 
 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323 (1979). When the standard applied is a mere preponderance of the evidence, the litigants share the risk of error in. roughly equal proportion.
 
 Id.
 
 If a substantial individual interest is at stake, a portion of the risk of erroneous decision-making is shifted away from the individual through application of the clear and convincing standard.
 
 Id.
 
 In the instant case, the defendant’s interest is in avoiding the imposition of preliminary injunctive relief against it; the public interest is in effective protection against future harm to the public from a defendant’s fraudulent investment schemes upon a sufficient showing of the defendant’s past substantive violations that indicate a reasonable likelihood of future fraudulent conduct.
 
 *435
 
 Balancing these opposing interests, we conclude that the defendant’s individual interest is not so substantial as to require a shift in the risk with the proportionately larger burden borne by the public.
 

 The District of Columbia Circuit reached the same conclusion in its decision in
 
 Securities and Exchange Commission v. Savoy Industries, Inc.,
 
 587 F.2d 1149, 1168 (D.C.Cir. 1978),
 
 cert. denied
 
 440 U.S. 913, 99 S.Ct. 1227, 59 L.Ed.2d 462 (1979). In that case, the SEC brought a civil enforcement action for permanent injunctive relief to prevent the defendant from committing future securities laws violations. The court rejected application of the clear and convincing standard of proof, justifying its use of the preponderance of the evidence standard on the basis that the deprivation likely to be suffered by the defendant — his inability to commit future securities laws violations— was not so severe a possible consequence of the civil enforcement action to require imposition of the higher standard of proof. We, too, find that — particularly where preliminary injunctive relief is involved —
 
 [8]
 
 this type of deprivation and the individual’s interest in avoiding it, especially in light of the significant public interest in effectively policing the securities industry and preventing future securities frauds shown to be reasonably likely, necessitate adherence to the preponderance of the evidence standard. This being so, we need not advert to the SEC’s well-supported argument that it has carried its burden of proof, whether the standard be clear and convincing
 
 or
 
 preponderance of the evidence.
 

 (b) Proof of the Defendant’s Scienter
 

 In order to succeed in its application for preliminary injunctive relief, the SEC must thus prove by a preponderance of the evidence that the defendant is engaged in or about to engage in a substantive violation of either the 1933 or the 1934 Act or of the regulations promulgated thereunder. When scienter
 
 [9]
 
 is an element of the substantive violation sought to be enjoined, it must be proven before an injunction may issue. Aaron v.
 
 Securities and Exchange Commission,
 
 446 U.S. 680, 699-703, 100 S.Ct. 1945, 1957-58, 64 L.Ed.2d 611 (1980). Accordingly, the SEC is required to establish scienter as an element of a civil enforcement action to enjoin violations of § 17(a)(1) of the 1933 Act, § 10(b) of the 1934 Act, and Rule 10b-5 promulgated under that section of the 1934 Act.
 
 Id.
 
 at, 1958.
 
 [10]
 

 Following hearing, the district court issued its order of preliminary injunction along with its findings of fact and conclusions of law in support of that order. The defendant First Financial contends in brief, that “[t]he district court did not find scien-ter and the conclusions of law and the order thereon are not supported.”
 

 It is true that the district court did not make express findings that the misconduct of the defendant was knowing or intentional. However, the specific findings of fact of the district court — e. g., that even in July 1979, the defendant sold $1,000,000 of securities to a customer (finding 21), even though already in default in the agreed-upon repurchase from another customer of $4,000,000 value of securities,
 
 *436
 
 (findings 11, 12, 13); that the $500,000 value of securities purchased by another customer from First Financial in May, 1979 were never in fact delivered to the agreed-upon depositary, as was discovered when First Financial defaulted on its obligation to repurchase the securities in August, 1979 —clearly establish that scienter was proved by the SEC. From these findings, well supported by the record evidence,
 
 [11]
 
 scienter is inferentially stated and proved, although not specifically labelled as such by the district court. See:
 
 Huddleston v. Herman & MacLean, supra,
 
 640 F.2d at 546-47;
 
 Securities and Exchange Commission v. Blatt,
 
 583 F.2d 1325, 1334 (5th Cir. 1978).
 
 [12]
 

 (c) The Motion to Suppress
 

 Immediately prior to hearing on the motion for preliminary injunction, the defendant made a motion to suppress certain evidence allegedly obtained by the SEC pursuant to an illegal search conducted by a creditor of the defendant. The district court refused to rule on the defendant’s motion prior to the hearing for injunctive relief, and it is on this basis that the defendant contends the district court abused its discretion in issuing the order of preliminary injunction. The defendants suggest, in an argument that is difficult to articulate intelligibly, that somehow this action of the district court prevented them from introducing evidence to dispute the SEC's un-controverted case at the hearing, for fear of imperiling their claim to the attorney-client privilege as to revelation of matters that (presumably) otherwise could have been offered to defend against the grant of a preliminary injunction. The record contains no suggestion, nor the brief any factual reason, in support of this conclusory argument that defendants were prejudiced by the failure of the district court to delay the hearing on the preliminary injunction until after the motion to suppress was heard.
 

 In the absence of a showing of prejudice by the defendant, we do not find that the district court abused its discretion in issuing the order of preliminary injunction prior to hearing and decision on the motion to suppress.
 

 II.
 

 The Appointment of a Temporary Receiver
 

 Following hearing on motion of the SEC, the district court issued an order appointing a temporary receiver for the defendant First Financial. The receiver was directed to take exclusive control of the corporate
 
 *437
 
 assets in order to prevent injury to First Financial investors and to prevent further violations of the federal securities laws.
 
 [13]
 
 First Financial challenges the validity of the order on the basis that the district court was without jurisdiction to appoint a receiver due to the filing five days earlier of an involuntary petition in bankruptcy against First Financial.
 

 Section 362 of the Bankruptcy Reform Act of 1978, 11 U.S.C § 362, provides for an automatic stay, upon the filing of a bankruptcy petition, of the following (subsection a):
 

 (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
 

 (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the ease under this title;
 

 (3) any act to obtain possession of property of the estate or of property from the estate.
 

 The same section establishes certain exceptions to the automatic stay provisions. Thus, the filing of a bankruptcy petition does not operate as a stay (subsection
 
 b)
 

 (4) under subsection (a)(1) of this section, of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit’s police or regulatory power;
 

 (5) under subsection (a)(2) of this section, of the enforcement of a Judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit’s police or regulatory power.
 

 Significantly, there is no exemption from the automatic stay affecting an act to obtain possession of property of the estate or of property from the estate (§ 362(a)(3)).
 

 The defendant First Financial contends that the appointment of a temporary receiver is not a means by which the SEC can act to enforce its regulatory powers and, therefore, is not exempted from the automatic stay by provision of § 362(b)(4). We disagree.
 

 A continuing civil enforcement proceeding brought by a governmental unit and the enforcement of
 
 injunctive
 
 relief obtained therein are exempted from the automatic stay provisions of § 362(a). § 362(b)(4) and (5).
 
 National Labor Relations Board v. Evans Plumbing Company,
 
 639 F.2d 291, 293 (5th Cir. 1981) (held the
 
 *438
 
 automatic stay provision does not apply to NLRB enforcement proceeding for injunc-tive reliéf and back pay).
 
 See also In Re Bel Air Chateau Hospital, Inc.,
 
 611 F.2d 1248, 1250-51 (9th Cir. 1979) (held NLRB proceedings exempted from automatic stay of old Bankruptcy Act and found result harmonious with new bankruptcy stay provisions of § 362). See also S.R. No. 95-989, 95th Cong., 2d Sess. 50, H.R. No. 95-595, 95th Cong., 2d Sess. 341,
 
 reprinted in
 
 [1978] U.S. Code Cong. & Ad. News 5787, 5836 and 6298 (governmental unit’s suit against debt- or to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws is not stayed; nor is'enforcement of an injunction in such cases stayed). Thus, the SEC’s continuing civil enforcement action and the enforcement of the
 
 preliminary injunction
 
 against First Financial are not stayed under § 362(a).
 

 The issue, however, is whether like reasoning applies to the appointment of a receiver in a continuing injunctive enforcement proceeding, especially in the absence of any stated exception in this regard to the automatic stay against “any act to obtain possession of property” of the bankrupt. § 362(a)(3).
 

 The appointment of a receiver is a well-established equitable remedy available to the SEC in its civil enforcement proceedings for injunctive relief. See section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a); section 27 of the Securities Exchange Act of 1934,15 U.S.C. § 78aa.
 
 [14]
 
 The district court’s exercise of its equity power in this respect is particularly necessary in instances in which the corporate defendant, through its management, has defrauded members of the investing public; in such cases, it is likely that, in the absence of the appointment of a receiver to maintain the status quo, the corporate assets will be subject to diversion and waste to the detriment of those who were induced to invest in the corporate scheme and for whose benefit, in some measure, the SEC injunctive action was brought.
 
 [15]
 
 As the Seventh Circuit stated in
 
 Securities and Exchange Commission v. Keller Corporation,
 
 323 F.2d 397, 403 (7th Cir. 1963):
 

 The prima facie showing of fraud and mismanagement, absent insolvency, is enough to call into play the equitable powers of the court. It is hardly conceivable that the trial court should have permitted those who were enjoined from fraudulent misconduct to continue in control of [the corporate defendant’s] affairs for the benefit of those shown to have been defrauded. In such cases the appointment of a trustee-receiver becomes a necessary implementation of injunctive relief.
 

 See also
 
 Securities and Exchange Commission v. Bowler,
 
 427 F.2d 190, 198 (4th Cir. 1970).
 

 Thus, the appointment of a temporary receiver is often a necessary ancillary form of relief in a SEC civil enforcement action for injunctive relief. And it was for this purpose — to insure complete enforcement of the federal securities laws — that the appointment of a temporary receiver was requested by the SEC and granted by the district court in the instant case. After a hearing on the SEC’s motion for appointment of a temporary receiver, the district court made the following findings, which are supported by the record evidence:
 

 (a) the defendants have systematically taken money from a number of financial institutions based upon false and misleading statements and omissions
 
 *439
 
 concerning the securities being sold to and repurchased from those institutions;
 

 (b) the nature of the assets (cash and securities) is such that they may be easily disposed, concealed, or dissipated; and
 

 (c) the defendants have repeatedly failed to appear at scheduled depositions and hearings.
 

 In order to protect the public welfare — and especially the interests of those who invested with First Financial — the appointment of a receiver was a necessary relief measure within the discretion of the court, as an ancillary to preliminary injunc-tive relief during the continuing civil enforcement proceeding. The district court thus properly granted the relief sought by the SEC requesting appointment of a temporary receiver.
 
 [16]
 

 The defendant First Financial argues that the appointment of the temporary receiver more properly comes within the automatic stay provision of § 362(a)(3), applicable to any act to obtain possession of the property of the debtor’s estate. First Financial bases its argument on the language of the appointment ordering the receiver “to take exclusive custody, control, and possession of” all First Financial assets.
 

 An examination of the legislative history of § 362, however, reveals that an “act to obtain possession” was not intended to include the judicial appointment of a receiver pursuant to a governmental unit’s enforcement of its police or regulatory powers (and the transfer of possession of the violator’s property to the receiver in order that he may perform his duty to maintain the status quo). Rather, the automatic stay applies to prevent dismemberment of the estate and insure its orderly distribution, S.R. No. 95-989, 95th Cong., 2d Sess. 50, H.R. No. 95-595, 95th Cong., 2d Sess. 341,
 
 reprinted in
 
 [1978] U.S. Code Cong. & Ad. News 5787, 5836 and 6298, in order to eliminate the impetus for a race of diligence by fast-acting creditors. See 1 Collier Bankruptcy Manual ¶ 362.03 at 362-14, 15 (3rd ed. 1980). The appointment of a temporary receiver, on the other hand, itself serves to prevent dismemberment of the corporate estate by management personnel who have been found to have acted fraudulently and who could otherwise easily dispose of the assets to the detriment of the debtor’s creditors.
 

 First Financial additionally relies on 28 U.S.C. § 1471(e) in urging that the district court was without jurisdiction to appoint a receiver to take possession of its assets. Section 1471(e), which is presently in effect as a transition provision, section 405(b) of Title IV of the Bankruptcy Reform Act of 1978, Pub.L.No. 95-598, establishes the bankruptcy court’s exclusive jurisdiction over all property of the debtor as of the commencement of the case with the filing of the bankruptcy petition.
 
 [17]
 
 However, the § 362 exceptions to the automatic stay, as well as the provisions of § 1471(b),
 
 [18]
 
 recognize that courts other than the bankruptcy court have jurisdiction to hear related proceedings involving the debtor. As previously noted, the appointment of a receiver for the debtor pursuant to a governmental
 
 *440
 
 unit’s enforcement of its regulatory powers is within the jurisdictional power of the district court in which the civil proceeding is prosecuted. To the extent that the exercise of this jurisdiction threatens the assets of the debtor’s estate, the bankruptcy court may issue a stay of those proceedings. 11 U.S.C. § 105(a). Additionally, 11 U.S.C. § 543 protects the bankruptcy court’s exclusive jurisdiction over the property of the estate by requiring the custodian of such property to preserve it and deliver it to the bankruptcy trustee.
 
 [19]
 
 In light of these provisions and the ancillary nature of the equitable relief of appointment of a receiver in regulatory enforcement actions we do not find that the district court’s order was made in contravention of the exclusive jurisdiction provision of § 1471(e).
 

 We thus hold that the district court did not act without jurisdiction in ordering the appointment of a temporary receiver for the defendant First Financial. Nor do we find that the district court’s order is otherwise reversible as an abuse of discretion. See
 
 Bookout v. First National Mortgage and Discount Company, Inc.,
 
 514 F.2d 757, 758; 12 Wright
 
 &
 
 Miller, Federal Practice and Procedure, Civil § 2986, p. 49 (1973).
 

 Conclusion
 

 We dismiss as moot the appeals from the order of preliminary injunction brought by Howton and Reynolds. The order of preliminary injunction entered against the defendant First Financial is affirmed on the basis that the district court did not err as a matter of law in issuing the injunction, nor did it abuse its discretion in any respect. The order appointing a temporary receiver for First Financial is likewise affirmed as a proper exercise of the district court’s discretionary equitable powers.
 

 AFFIRMED IN PART, DISMISSED IN PART.
 

 [1]
 

 . Appeals from interlocutory orders granting injunctive relief and appointing a receiver are authorized by 28 U.S.C. § 1292(a)(1) and § 1292(a)(2), respectively.
 

 [2]
 

 . The SEC action was based upon section 17(a) of the Securities Act of 1933 (the 1933 Act), 15 U.S.C. § 77q(a), section 10(b) of the Securities Exchange Act of 1934 (the 1934 Act), 15 U.S.C. § 78j(b), and Rule 1 Ob-5, 17 C.F.R. 240.1 Ob-5, promulgated under the latter act.
 

 [3]
 

 .Specifically, First Financial, through its officers Howton and Reynolds, offered and sold to the public packages of individual student loans made by financial institutions to college students and guaranteed by a federal agency. The defendants also offered and sold (in conjunction with the GSLs) repurchase agreements, according to which the defendant First Financial agreed to repurchase the GSLs from its customers at a future date for an amount reflecting a profit to the customer amounting to some 11% per annum interest for the period
 
 *432
 
 between the customer’s purchase of the securities package and First Financial’s repurchase of it in accordance with the agreement.
 

 [4]
 

 . The SEC is empowered to bring civil actions to enjoin violations of the antifraud provisions of the 1933 and 1934 Acts by specific provision of each act. Section 20(b) of the 1933 Act, 15 U.S.C. § 77t(b); Section 21(d) of the 1934 Act, 15 U.S.C. § 78u(d).
 

 [5]
 

 . The text of the provisions alleged to have been violated are as follows.
 

 Section 17(a), 15 U.S.C. § 77q(a):
 

 It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
 

 (1) to employ any device, scheme, or artifice to defraud, or
 

 (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements
 
 *433
 
 made, in the light of the circumstances under which they were made, not misleading, or
 

 (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.
 

 Section 10(b), 15 U.S.C. § 78j(b):
 

 It shall be unlawful for any person, directly or indirectly, by the use of any means or Instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—
 

 To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
 

 Rule 1 Ob-5, 17 C.F.R. § 240.106-5:
 

 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange
 

 (a) To employ any device, scheme, or artifice to defraud,
 

 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 

 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.
 

 [6]
 

 . A court may take judicial notice of its own records and of those of inferior courts. 9 Wright & Miller, Federal Practice and Procedure § 2410 at 359-60 (1971). See
 
 Wright v. City of Montgomery, Alabama,
 
 406 F.2d 867, 869 n.5 (5th Cir. 1969).
 

 [7]
 

 . In the recent past, this circuit has had occasion to address the issue in related proceedings under the federal securities laws. In
 
 Huddleston v. Herman & MacLean,
 
 640 F.2d 534, 546 and n.19 (5th Cir. 1981), a panel of this court required clear and convincing proof of fraud in private damage actions brought under Rule 10b-5. The Supreme Court, in
 
 Steadman v. Securities and Exchange
 
 Commission, - U.S. -, 101 S.Ct. 999, 67 L.Ed.2d 69 (1981), affirmed on a different basis this circuit’s holding in
 
 Steadman v. Securities and Exchange Commission,
 
 603 F.2d 1126, 1132-33 (5th Cir. 1979), that the SEC, in disciplinary administrative proceedings, must apply the preponderance of the evidence standard of proof. Since neither case arose pursuant to a civil enforcement action brought by the SEC, neither is dispositive as to this panel’s determination of the issue.
 

 [8]
 

 . The preliminary injunction simply preserves the status quo pending final determination of the action after a full hearing. It is “by its very nature, interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or final or conclusive, characterized by its for-the-time-beingness.” 7 (Part 2) Moore’s Federal Practice ¶ 65.04, pp. 65-35, 65-36 (1980),
 
 quoting Hamilton Watch Company v. Benrus Watch Company,
 
 206 F.2d 738, 739, 742 (2d Cir. 1953).
 

 [9]
 

 . “Scienter” has been defined by the Supreme Court as “a mental state embracing intent to deceive, manipulate, or defraud.”
 
 Ernst & Ernst v. Hochfelder,
 
 425 U.S. 185, 96 S.Ct. 1375, 1381 n.12, 47 L.Ed.2d 668 (1976). This definition embraces “knowing or intentional misconduct” proscribed by § 17(a)(1), § 10(b), and Rule 106-5.
 
 Aaron, infra,
 
 446 U.S. at 689, 100 S.Ct. at 1952.
 

 [10]
 

 .Aaron
 
 held that scienter is
 
 not
 
 required to prove 17(a)(2) and (3) violations.
 
 Id.
 
 at 1955-57. Some of the findings of fact made by the District Court below can be construed to represent a 17(a)(2) violation. See note 12
 
 infra.
 

 [11]
 

 . The record establishes the following: First Financial offered and sold GSLs packages to at least five investors: Blue Cross of Florida, Inc. (Blue Cross); Bank of Germantown; Wheeling Dollar Savings & Trust (Wheeling); Potter Savings & Loan (Potter); and Federal Life Insurance Company (Federal). First Financial represented to its customers that the GSLs subject to the agreements to sell and repurchase would be held in safekeeping at a designated place until the date of repurchase by First Financial. In no instance, however, were the GSLs delivered for safekeeping as represented. Nor were the GSLs ever delivered to First Financial’s customers upon its default under the various agreements. On at least two occasions, First Financial represented to its customers that it had wired certain sums of money to the customers. These amounts were never received. Additionally, First Financial twice represented that it could not comply with the terms of its agreements to repurchase the GSLs because it • was subject to a temporary restraining order obtained by the SEC. At the time the representations were made, however, no such order had been issued against it. First Financial remains in default to its individual customers as follows: approximately $1,060,000.00 is owed to Blue Cross; $500,000 plus interest to Bank of Germantown; $1,000,000 to Wheeling; $1,000,-000 plus interest to Potters; $2,000,000 plus interest to Federal Life.
 

 [12]
 

 . The district court did not specify which provisions of § 17(a) the defendant was found to have violated. It is sufficient, however, that certain language in the order of preliminary injunction tracks that of § 17(a)(2). Thus, whether or not the record indicates that the defendant acted with the requisite scienter, the order is valid to the extent that it is based on violation of § 17(a)(2). Of course, since § 17(a) only reaches the fraudulent conduct of sellers and not the fraudulent conduct of buyers,
 
 R. Rosenberg and Sons, Inc. v. St. James Sugar Cooperative, Inc.,
 
 447 F.Supp. 1, 4 (E.D.La. 1976),
 
 aff'd.
 
 565 F.2d 1213 (5th Cir. 1977), the defendant’s § 17(a)(2) violations forming the basis of the issuance of the injunction would consist of misconduct with respect to the offering and selling of the GSLs.
 

 [13]
 

 . Specifically, the district court ordered the receiver
 

 (a)To take exclusive custody, control, and possession of the securities, funds, property, premises, and other assets of or in the possession or under the control of FIRST FINANCIAL, where situated, with full power to sue for, collect, receive and take into possession all goods, chattels, rights, credits, monies, effects, books and records and any other papers of defendant FIRST FINANCIAL and of investors and customers whose monies or other assets are now being held or under the control of defendant FIRST FINANCIAL; to conserve, hold, and manage all such assets, pending further order of this Court, in order to prevent irreparable loss, damage, and injury to investors and customers; to conserve and prevent withdrawals and misappropriations of funds entrusted to defendant FIRST FINANCIAL; and to prevent further violations of the federal securities laws by defendant FIRST FINANCIAL and its agents, employees, attorneys, and assigns, as alleged in the Commission’s Complaint in this action;
 

 (b) To make such payments and disbursements from the funds so taken into its custody, control, and possession or thereafter received by it, and to incur such expenses, including the employment of attorneys, as may be necessary and advisable in discharging its duties as temporary receiver;
 

 (c) To undertake an independent inquiry and investigation into the financial condition of defendant FIRST FINANCIAL; and
 

 (d) To present to this Court, within such time as set by the Court, its report reflecting the existence and value of the assets of defendant FIRST FINANCIAL, the extent of its liability, both those claimed by others and those which the temporary receiver believes to be legal obligations, and any further information which the temporary receiver believes may assist this Court in disposing of this action.
 

 [14]
 

 .
 
 Los Angeles Trust Deed
 
 &
 
 Mortgage Exchange v. Securities and Exchange Commission,
 
 285 F.2d 162, 181 (9th Cir. 1960). See also
 
 Commodity Futures Trading Commission
 
 v.
 
 Muller,
 
 570 F.2d 1296, 1300 (5th Cir. 1978);
 
 Securities and Exchange Commission v. Investors Security Corporation,
 
 560 F.2d 561, 566-67 (3rd Cir. 1977);
 
 Securities and Exchange Commission v. Beisinger Industries,
 
 552 F.2d 15, 18-19 (1st Cir. 1977);
 
 Securities and Exchange Commission v. Manor Nursing Centers, Inc.,
 
 458 F.2d 1082, 1103 (2d Cir. 1972).
 

 [15]
 

 .
 
 Securities and Exchange Commission v. R.J. Allen & Associates, Inc.,
 
 386 F.Supp. 866, 878-79 (S.D.Fla.1974),
 
 quoting Securities and Exchange Commission v. Capital Counsellors, Inc.,
 
 332 F.Supp. 291, 304 (S.D.N.Y.1971).
 

 [16]
 

 . This result is consistent with the purpose served by the governmental unit exemptions: to permit the pursuit of actions to protect the public health and safety, and thereby avoid making the bankruptcy court a haven for wrongdoers. See 1 Collier Bankruptcy Manual ¶ 362.04 at 362-23 (4th ed. 1980); 2 Collier on Bankruptcy ¶ 362.04 at 362-36 (15th ed. 1980).
 

 [17]
 

 . The essential purpose of this comprehensive jurisdictional provision is “to render the authority and control of the bankruptcy court paramount and all-embracing to the extent required to achieve the ends contemplated by the new legislation and to exclude any interference by the acts of others or by proceedings before other courts where such activities or judicial proceedings would in some way frustrate the jurisdiction of the bankruptcy court.” 1 Collier Bankruptcy Manual ¶ 3.01, p. 3-23 (3rd ed. 1980).
 

 [18]
 

 .28 U.S.C. § 1471(b):
 

 Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.
 

 [19]
 

 . The bankruptcy court may, however, allow the custodian to continue in the possession of