In re WELLINGTON RESOURCES COR-
PORATION and Whitehall Mining
Company, Inc., Debtors.

In re WELLINGTON RESOURCES COR-
PORATION and Whitehall Mining
Company, Inc., Plaintiffs,

v.

STATE OF TEXAS, Defendant.

Bankruptcy Nos. 382–00016–F,
382–00017–F.
Adv. Nos. 382–0011, 382–0034,
382–0064 and 382–0065.

United States Bankruptcy Court,
N. D. Texas,
Dallas Division.

April 30, 1982.

Philip I. Palmer, Jr., Dallas, Tex., for plaintiffs.

Robert Yaquinto, Jr., Dallas, Tex., trustee.

Jeffery L. Hart, Asst. Atty. Gen., Austin, Tex., for defendant.

## MEMORANDUM AND OPINION OF LAW

JOHN C. FORD, Bankruptcy Judge.

The issue decided in the case at bar is whether the State of Texas or the Federal Bankruptcy Court has exclusive jurisdiction over the assets of these Debtors. It is the position of this Court that the filing of Chapter 11 Petitions by these related Debtors immediately invokes the exclusive jurisdiction of this Court over the assets of these Debtors pursuant to the provisions of the Bankruptcy Code.[1]

This Memorandum and Opinion of Law supercedes the Preliminary Findings of Fact previously filed and sets out Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 752.

### FINDINGS OF FACT

Wellington Resources Corporation, ("Wellington"), and Whitehall Mining Company, Inc., ("Whitehall"), were engaged in the business of marketing shares in gold mines scattered throughout the Southwestern United States. Wellington and Whitehall are related companies with bifurcated operations and responsibilities. Wellington is primarily a marketing unit while Whitehall secures and develops mining properties. Both companies are presently inactive pending the resolution of a securities fraud case brought in State Court and the release of operating funds held in the registry of the United States District Court for the Northern District of Texas.

Wellington's marketing program is readily ascertainable from their professionally produced prospectus entitled, "Wellington Resources Corporation—Ore Purchase For the Miner." According to testimony offered in a hearing held February 9, 1982, Wellington paid in excess of $25,000.00 to a Dallas law firm to produce the prospectus and accompanying supplementary material. From the very first page of the prospectus, it is clear that Wellington sought to attract well-heeled investors looking for a surefire tax shelter. In an introductory letter addressed to "Dear FELLOW TAXPAYER", Arthur Espy, the President of Wellington, touts Wellington's Ore Purchase For the Miner as an answer for those people seeking to use current taxable income to build

---

1. Bankruptcy Reform Act of 1978, Pub.L. 95 598 November 6, 1978, 92 Stat. 2549, effective October 1, 1979.

future capital while preserving their future purchasing power against the ravages of inflation. The letter goes on to describe how a $10,000.00 cash expenditure may create a $60,000.00 deduction from taxable income, and establish the investor in a major gold and silver mining position, involving 2,500 tons of ore that will be developed, mined, and processed over approximately the next seven to ten years. The investor, denominated by Wellington as a "miner", paid a nominal sum to Wellington for the 2,500 ton ore block. They then paid $10,000.00 cash and signed a recourse promissory note for $50,000.00 to Whitehall for the development of the ore blocks. In addition, Whitehall took a 40% overriding royalty interest in the production. The tax advantages for an investor supposedly arise out of the investor's ability to store the extracted ore and not declare it as income until it is actually sold. As a "miner" all costs of production, including the $10,000.00 cash payment and $50,000.00 recourse promissory note, could be deducted in the current tax year as costs of engaging in the "mining business." Hence, for a paltry $10,000.00 cash payment, a "miner" could theoretically derive a $60,000.00 deduction which, if the "miner" is in the 50% tax bracket, could amount to a $30,000.00 cash savings in taxes paid. To facilitate taking the deduction, Wellington's prospectus gave each "miner" the option of mining his own ore, finding an independent contractor to do it for him, or contracting with Whitehall to do the mining. However, due to the far-flung locations of the mining sites, Whitehall was assured of receiving virtually all of the mine development contracts.

All went well for Wellington and Whitehall during the fall of 1981 as investors in search of a golden tax writeoff signed up by the droves to become miners in a latter day Sutter's Folly. The coffers of Wellington and Whitehall grew daily until by late fall they contained more than one million dollars.

The story might have ended with happy miners exultantly counting their ever-increasing hoards of gold if not for the intervention of the State of Texas. The State Securities Commission began to investigate the Wellington and Whitehall program sometime during the early fall of 1981. Several aspects of the Wellington/Whitehall program caused great concern to the State Securities people. None of the principals of Wellington or of Whitehall had registered as brokers nor had the program itself been registered or passed upon by the State Securities Board. Two investors living in Houston complained to the Board that they were unable to obtain refunds from the Wellington/Whitehall companies once they decided to back out of the program. The Securities Board decided that the sale of 500 ton blocks of ore in scattered gold mines was a sale of a security, and the failure of Wellington/Whitehall to register with the State was a fraud committed upon the public. Moreover, the promise of tax benefits without any assurance that the same would be permitted by the Internal Revenue Service undermined the legitimacy of the offering literature and transformed the entire program into one offering nothing more than a share in a highly speculative gold mining operation.

The State of Texas finally moved to halt the operations of Wellington/Whitehall when it was discovered that Wellington/Whitehall were on the verge of selling the recourse promissory notes to a discount purchaser. The State Securities Commissioner certified the case to the Office of the Attorney General, who in turn presented the case to Judge Farris of the 151st Judicial District Court of Harris County, Texas. On December 28, 1981, Judge Farris entered a Temporary Restraining Order enjoining Wellington/Whitehall and the principals thereof from engaging in any activity or action to further promote or develop the mining program. In addition, Judge Farris set a hearing on the State's application for Temporary Injunction for January 6, 1982. The effect of the T. R. O. and the subsequently granted Temporary Injunction was devastating to Wellington/Whitehall's continued operations. All bank accounts of Wellington/Whitehall were frozen and all business operations ground to a halt. The

State's pending charges of fraud cast a pall over everyone involved.

■ On January 5, 1982, after engaging new legal counsel, Wellington/Whitehall filed petitions for relief pursuant to Chapter 11 of the Bankruptcy Code. Concurrently, an Application for Removal was filed with this Court and served upon all adverse parties and Judge Farris. Said application sought to remove the proceeding then pending in Judge Farris' Court to this Court. The nature and significance to be attributed to the notification of the removal given Judge Farris is hotly disputed. At the hearing before Judge Farris held on the morning of January 6, 1982, an attorney dispatched from the law firm representing Wellington/Whitehall in the bankruptcy proceedings sought to advise Judge Farris of the removal. Judge Farris, presumably annoyed by such unexpected news, ignored the notice given by the attorney and proceeded to grant the State's application for Temporary Injunction. The State contends that the appearance of the attorney amounted to a general appearance and consent by the Debtors to the issuance of the Temporary Injunction. The State's argument on this issue barely rises to the level requiring a response. Suffice to say that the notice of removal given to Judge Farris could be nothing other than a special appearance contesting the jurisdiction of the 151st Court by the very nature and operation of the Application for Removal.

The issuance by Judge Farris on January 6, 1982, of the Temporary Injunction enjoining Wellington/Whitehall immediately cast into confusion the jurisdiction of this Court and Judge Farris' Court. On the one hand, Judge Farris clearly was enjoining the Debtors from engaging in any activity connected with the further promotion or operation of the gold mining investment program. On the other hand, this Court was immediately vested with exclusive jurisdiction over the assets of these Debtors pursuant to the operation of the Bankruptcy Code provisions brought into play by the filing of the Chapter 11 petitions on January 5, 1982. The added element of the removal, and Judge Farris' defiance of same, further complicated the question of which Court ultimately has control of the assets of these Debtors.

On January 27, 1982, this Court first began the task of unraveling the complicated jurisdictional issues presented by the case at bar. After hearing testimony and convening a short, informal session in chambers, I ordered from the bench the remand of the removed proceeding back to the 151st Court while retaining that part of the proceeding dealing with the assets of these Debtors. The partial remand was ordered in deference to the continued investigation being conducted by the State of Texas into the allegedly fraudulent practices of the Debtors. I made it very clear, both in chambers and in the courtroom, that I would countenance no evasion of any civil or criminal investigation being conducted by the State of Texas. The partial remand was also ordered, in part, because of an agreement arrived at in chambers between the Assistant Attorney General, the Debtors' attorney and the Court, that the Assistant Attorney General would present a motion to modify the Temporary Injunction to Judge Farris asking that the Temporary Injunction be altered to allow the Bankruptcy Court to take full control of the assets of the Debtors. Combined with the partial remand, I felt the modification, if granted, would serve to clarify the jurisdiction of the Bankruptcy Court over the assets of the Debtors.

Soon thereafter, the Assistant Attorney General notified my office that he was unable to present the proposed modification, and would not do so in the near future. I convened an emergency hearing on February 9, 1982, to further attempt to clarify the jurisdictional question of control over the Debtor's assets. A trustee had already been appointed by the United States Trustee's Office and was ready to take control of the Debtors' assets once they were freed from the grip of the Temporary Injunction entered on January 6, 1982, by Judge Farris. The lengthy testimony offered February 9, 1982, did nothing to convince me that

the Debtors had unquestionably committed fraud. Unlike other gold mining schemes, no evidence whatsoever was presented showing that the principals of Wellington/Whitehall had unduly enriched themselves with the money collected from the investment program. Evidence was offered, however, showing that the Debtors had bought substantial amounts of heavy equipment and leases on at least one mining location. In addition, the Debtors had employed bona fide geologists and mining engineers who had spent considerable time mapping out potential mining sites. This evidence weighed heavily in my decision to exert the jurisdiction of the Bankruptcy Court over the Debtors' assets.

I entered a Permanent Injunction from the bench on February 9, 1982, and signed its written embodiment on February 16, 1982. Said Permanent Injunction enjoined all officers, employees and agents of the State of Texas from interfering with the assets of the Debtors. On February 18, 1982, the State of Texas made Application for a Writ of Prohibition before the United States District Court, and one week later, after a hearing, the Writ was denied in all respects. The State of Texas then applied for a stay pending appeal of my various orders, which was denied first in this Court and then subsequently denied by the United States District Court. Further wishing to clarify and substantiate the jurisdiction of this Court, I then entered an Order declaring the Temporary Injunction entered by Judge Farris on January 6, 1982, to be a nullity since it was entered subsequent to the notification of the removal. The State of Texas has appealed from that order and other orders of this Court.

The present posture of the case at bar is still unclear at this writing. Wishing to avoid the onerous task of choosing which court to obey, the bank holding some $90,-000.00 in cash in Wellington/Whitehall accounts interpleaded the money into the United States District Court. Barring the release of that money, the Debtors remain dead in the water and will probably remain so for the foreseeable future. What follows herein is a summation of the law supporting the continued exclusive jurisdiction of this Court over the assets of the Debtors.

## CONCLUSIONS OF LAW

Pursuant to Section 301 of the Bankruptcy Code, a voluntary bankruptcy case is commenced by the filing of a petition with the bankruptcy court. See 11 U.S.C.A. § 301. Moreover, the commencement of the voluntary case constitutes an Order for Relief under either Chapter 7, 11, or 13. See 11 U.S.C.A. § 301; and 11 U.S.C.A. § 102(6). Once a case is commenced, the bankruptcy court has exclusive jurisdiction over the debtor's assets. In fact, the language of 28 U.S.C.A. § 1471(e), as stated below, indicates the exclusive jurisdictional grant is not discretionary in the bankruptcy court. Title 28 U.S.C.A. § 1471(e) states:

"(e) The bankruptcy court in which a case under title 11 is commenced *shall* have exclusive jurisdiction of all the property, wherever located, of the debtor, as of the commencement of such case." 28 U.S.C.A. § 1471(e); Pub.L. 95–598, Title II, § 241(a), November 6, 1978, 92 Stat. 2668; (emphasis added).

The use of the word "shall" instead of "may" in § 1471(e) creates the unmistakeable inference that the bankruptcy court *must* take exclusive jurisdiction over the debtor's assets at least until a subsequent determination is made to abstain or dismiss the proceeding.

The all pervasive jurisdictional grant under the Bankruptcy Reform Act of 1978 is to become fully effective on April 1, 1984. Congress decided when introducing the legislation that an interim transitional period would allow for the study of case-load and judicial time requirements, thus permitting the Judicial Conference to accurately assess the number of bankruptcy judgeships under the new Bankruptcy Code. H.Rep.No.95–595, pp. 459–460, U.S.Code Cong. & Admin. News 1978, p. 5963; 9 Bkr.L.Ed., Legislative History § 82:24. Accordingly, Public Law 95–598, Title IV, § 402(b), November 6, 1978, 92 Stat. 2682, provides that the newly added Chapter 90 of Title 28 is effec-

tive April 1, 1984. However, Public Law 95–598, Title IV, § 405, November 6, 1978, 92 Stat. 2686, provides that in the interim transitional period from October 1, 1979, to April 1, 1984:

"(a)(1) All cases commenced under title 11 of the United States Code during the transition period shall be referred to the United States Bankruptcy Judges. The United States Bankruptcy Judges may exercise in such cases the jurisdiction and powers conferred by subsection (b) of this section on the courts of bankruptcy continued by section 404(a) of this Act and all proceedings in such cases shall be before the United States Bankruptcy Judges . . .

(b) During the transition period, the amendments made by Sections 241, 243, 250, and 252 of this Act shall apply to the courts of bankruptcy continued by section 404(a) of this Act the same as such amendments apply to the United States bankruptcy courts established under Section 201 of this Act." (See note preceding Chapter 90 in the supplement to Title 28 § 1446 to § 1650 for a complete text of the transition provisions enacting Sections 1471 through 1482.)

As above stated, the amendments to Title 28 made by Section 241 are expressly made applicable to the bankruptcy court during the transition period.

■ On January 5, 1982, Wellington and Whitehall filed voluntary petitions under Chapter 11 of the Bankruptcy Code. The filing of the Chapter 11 petitions commenced the case and constituted an Order for Relief. In addition, the express provisions of § 1471(e) provide that this Court has had exclusive jurisdiction over the assets of these Debtors since the commencement of the cases. Although this Court has determined that it has jurisdiction over Wellington/Whitehall's Chapter 11 Proceedings, this Court may, in its discretion, decline to further exercise such jurisdiction. See 11 U.S.C.A. § 305; H.Rep.No.95–595, p. 325; S.Rep.No.95–989, p. 35, U.S.Code Cong. & Admin.News 1978, p. 5787; 2 Collier on Bankruptcy, (15th ed.) ¶ 305.01 et

seq. Early in this case, the State of Texas filed a Motion to Dismiss which I have treated as a Motion to Abstain under § 305. After shortened notice and a hearing, I denied the State's Motion to Dismiss on the grounds that it would be in the best interests of the creditors of Wellington and Whitehall and would better serve the Debtors to retain jurisdiction over the Chapter 11 proceedings. In my judgment, the consolidation, safekeeping and eventual distribution of the assets of these Debtors might be jeopardized if I were to abstain from hearing these Chapter 11 proceedings, or suspend the proceedings pending the outcome of the state court proceedings. It should be noted that no receiver has been appointed in the state court proceedings concerning Wellington/Whitehall. From a practical standpoint, the trucks and other motor vehicles owned by the Debtors will depreciate in value unless they are quickly disposed of. The bankruptcy trustee is already attending to this and other matters of immediate concern. In addition, no evidence has been presented showing how the State's criminal or civil case is prejudiced by continuing these proceedings in this Court. Having found no reason to abstain from hearing or suspending these proceedings, I decline to do so. See H.Rep.No.95–595, p. 325; 9 Bkr.L.Ed., Leg.H. § 82:16; and 11 U.S.C.A. § 305.

On February 16, 1982, I entered a Permanent Injunction against the State of Texas, its employees, agents, and officers, prohibiting them from interfering with the assets belonging to these Debtors. The Permanent Injunction is meant to prevent interference with the bankruptcy trustee's efforts to collect and protect the assets belonging to the Debtors' estates. Authority to enter such an injunction is derived from 11 U.S.C.A. § 105, which permits a bankruptcy court to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code. See 11 U.S.C.A. § 105(a); but see H.R. 8200 § 405(a)(1), commented upon in H.Rep.No.95–595, pp. 460–461, 9 Bkr.L.Ed., Leg.H. § 82:24, for limitations during the transition period. In addition, a recent

Fifth Circuit Opinion adds support to my contention that the bankruptcy court has exclusive jurisdiction over the Debtor's assets and may issue any order necessary to enforce that jurisdiction. In *Securities and Exchange Commission v. First Financial Group of Texas*, 645 F.2d 429, at 439–440 (5th Cir. 1981), the Court noted in a footnote reference to 28 U.S.C.A. § 1471(e):

> "The essential purpose of this comprehensive jurisdictional provision is 'to render the authority and control of the bankruptcy court paramount and all-embracing to the extent required to achieve the ends contemplated by the new legislation and to exclude any interference by the acts of others or by proceedings where such activities or judicial proceedings would in some way frustrate the jurisdiction of the bankruptcy court.' 1 Collier Bankruptcy Manual ¶ 3.01, p. 3–23 (3rd ed. 980)." *First Financial*, supra at 439, footnote 17.

Although the Fifth Circuit upheld the appointment of a temporary receiver by a federal district court while an involuntary petition was pending against First Financial, the Court noted that the pendency of the S.E.C. regulatory action would not be a hindrance to the bankruptcy court issuing a stay of those proceedings to the extent that the exercise of the district court's jurisdiction threatened the assets of the debtor's estate. See *First Financial*, supra at 440; and 11 U.S.C.A. § 105(a). By analogy to the case at bar, the continued attempts by the State of Texas to retain jurisdiction over the assets of the Debtors' estates frustrate the jurisdiction of this Court. While in no way impeding the regulatory action being pursued by the State of Texas in state court, this Court does have the authority and mandate, by virtue of 11 U.S.C.A. § 105(a) and 28 U.S.C.A. § 1471(e), to issue any orders necessary to achieve control over the assets belonging to the Debtors' estates.

The Debtors filed an Application for Removal of the civil proceeding in the 151st Judicial District Court to this Bankruptcy Court at the same time they filed their Chapter 11 petitions. Removal to the bankruptcy court is accomplished by filing an Application for Removal in accordance with Local Bankruptcy Rule 7004 and 28 U.S.C.A. § 1478. If, as in this case, a civil proceeding sought to be removed is pending at the time the bankruptcy petition was filed, then the debtor has only thirty days within which to remove the civil proceeding to the bankruptcy court. See Local Bankruptcy Rule 7004(a)(3). Notice must be given to all adverse parties and the civil proceeding must be removed to the bankruptcy court sitting within the district in which the civil proceeding is pending. See 28 U.S.C.A. § 1478(a). In the case at bar, the Debtors met all the requirements except that of 28 U.S.C.A. § 1478(a), in that they should have removed the state proceeding to the bankruptcy court sitting in the district wherein the civil proceeding is pending. Since the state court sits in Harris County, in Houston, Texas, the proceeding should have been removed to the Bankruptcy Court for the Southern District of Texas, which sits in Houston, Texas.

Soon after having removed the civil proceeding, the State of Texas made a Motion to Dismiss the removed proceeding. After examining the file, I noted that the proper motion to be made should have been a Motion for Remand. On January 27, 1982, at the first hearing held in these proceedings, I mentioned the fact that the Debtors had removed the civil proceeding from the 151st Court and stated that, sua sponte, I was going to remand the matter. Shortly thereafter, I signed an Order remanding the removed proceeding.

 The proceeding in the 151st Judicial District Court of Harris County is a regulatory action being pursued by the State of Texas. As such, it falls squarely into the exception contained in 28 U.S.C.A. § 1478(a) barring the removal of regulatory actions brought by a governmental entity. The remand of January 27, 1982, is only a partial remand and remands only the regulatory action pending before Judge Farris of the 151st Court. This Court has not remanded that part of the removed proceeding having to do with the assets of

Wellington and Whitehall. Since the Temporary Injunction entered by Judge Farris froze all the assets of the Debtors and also enjoined the Debtors and other parties not now before this Court from engaging in any activities promoting the sale of investment shares in the Wellington/Whitehall investment program, I felt it necessary to retain that part of the proceeding enjoining the disposition of the assets of Wellington and Whitehall. Although it is true that the Debtors mistakenly removed the civil proceeding to this Court instead of to the Bankruptcy Court for the Southern District of Texas, Houston Division, I felt that remand of the entire removed proceeding would not be warranted. The provision contained in 28 U.S.C.A. § 1478(a) providing for removal to the bankruptcy court within the district wherein the civil proceeding is pending has caused untold confusion to many practitioners within the bankruptcy courts. Many practitioners feel that they can remove a proceeding clear across the country simply because the proceeding is being removed to the bankruptcy court. This clearly is not the case. General federal rules concerning proper venue and due process require that removal be made to the bankruptcy court sitting where the removed proceeding is already pending. See Note, "Bankruptcy and the Limits of Federal Jurisdiction," 95 Harvard L.Rev. 703 (1982). When faced with a situation where a practitioner has improperly removed a proceeding to the bankruptcy court *not* within the district where the civil proceeding is pending, the bankruptcy court can take one of three actions: 1) remand the case, 2) transfer the case to the bankruptcy court sitting in the district where the removed proceeding had been pending, or, 3) keep the removed proceeding. In the case at bar, I discarded the first two options and decided that the extraordinary action of retaining part of a civil proceeding removed to the wrong district was warranted by the facts of the situation at hand. In terms of practical considerations, Houston and Dallas are located within the same state and counsel for the State of Texas, who offices in Austin, must travel an equal distance to both Houston and Dallas. Of much greater importance, however, was the consideration that the jurisdiction of the Court over the Debtors' assets was being frustrated by the continued inclusion of the Debtors in state proceedings enjoining the disposition of the assets of these Debtors.

Having remanded the entire proceeding back to the 151st Court except for the part enjoining and encumbering the assets of Wellington and Whitehall, I was next presented with a motion by the Debtors to hold that the Temporary Injunction issued by Judge Farris was a nullity and void. It was argued that removal cuts off the jurisdiction of the court from which the case was removed. I could find no authority specifically speaking to this issue in the context of the bankruptcy court and the new Bankruptcy Code. However, prior decisions by this Court and other bankruptcy courts have noted the similarity of the bankruptcy removal statute found in 28 U.S.C.A. § 1478 and the district court removal statute found in 28 U.S.C.A. § 1441 et seq. See *In re Delta Group, Ltd.*, 16 B.R. 333 (Bkrtcy., N.D.Tex.1982); *McCallum v. Upland Car Wash*, 6 B.C.D. 1223, 7 B.R. 76 (Bkrtcy., C.D.Calif.1980); and *Tidwell v. Thomas*, 4 B.R. 100 (Bkrtcy.N.D.Tex.1980). Consequently, I believe it proper in this situation to apply the case law developed under 28 U.S.C.A. § 1441 et seq. to interpret the bankruptcy removal statute of 28 U.S.C.A. § 1478. The removal statutes, as well as the entire procedural structure of the bankruptcy courts, mirrors that of the district courts. See H.Rep.No.95–595, p. 432; 9 Bkr.L.Ed.Leg.H. § 82:22.

■■ In the context of removal to the federal district courts of proceedings pending in state court, there is little doubt that a removal, even including an improper removal, deprives the state court of further jurisdiction in the proceeding. Thus, *Moore's* provides the following commentary on proceedings removed from state court:

"Following the interim period which ends when written notice has been given and a copy of the removal petition filed with the state court clerk, it is clear that state

court jurisdiction is at an end for § 1446(e) commands that "the state court shall proceed no further unless and until the case is remanded." Other provisions also bolster this command, if any be needed. And the state court is deprived of jurisdiction to proceed with the removed action unless and until the case is remanded, *irrespective of whether the action is removable*, which is a question for the federal court...

And the federal tribunal may properly issue an injunction to prevent further state court proceedings in the removed action. Even in the absence of such prohibitory or other corrective measures, § 1446(e) operates as a statutory stay upon further state court proceedings in the removed action. Any further proceeding in the state court in the removed action, unless and until the case is remanded, would be a nullity, unless the defendant appeared in the state action and contested the right of the state court to proceed further."

1A *Moore's Federal Practice* ¶ 0.168(3.–8) at pp. 511–516; (emphasis added).

Of course the *Moore's* commentary and case law cited therein is predicated on the provisions of 28 U.S.C.A. § 1446(e) and the power of U. S. District Courts to enjoin other courts. There is no express equivalent of 28 U.S.C.A. § 1446(e) in the Bankruptcy Code, and the bankruptcy court cannot enjoin other courts. See 28 U.S.C.A. § 1481. However, Local Bankruptcy Rule 7004(c) contains provisions which provide for notice to the court from which a proceeding is being removed. Local Bankruptcy Rule 7004(c), which is patterned after the Interim Bankruptcy Rules promulgated at the time the Code was enacted, states that filing a copy of the Application for Removal with the court from which the civil action or proceeding was removed, "... shall effect the removal and the parties shall proceed no further in that court unless and until the case is remanded." Given the wording and intent of this Local Bankruptcy Rule, I think it is proper for this Court to issue an order declaring the Temporary Injunction to be a nullity and void in so far as

it affects Wellington and Whitehall. Additional authority to enter such an order is to be found within 11 U.S.C.A. § 105(a) and the all pervasive jurisdictional grant of 28 U.S.C.A. § 1471 et seq.

It is important to note that this holding in no way applies to the entire proceeding in the 151st Court. See *Ford Motor Company v. Transport Indemnity Company*, 12 B.R. 143, 146 (E.D.Mich.1981). Parties other than Wellington and Whitehall are joined in the state court proceeding. Only Wellington and Whitehall are before this Court. Parties not in bankruptcy should not be allowed to remove an action to this Court by boot-strapping themselves to the removal perfected by the Debtors. In fact, the removal by Wellington and Whitehall can in no way hinder, delay or stay the state proceeding as far as other non-debtor entities and persons are concerned. Although I have no authority for this proposition, I believe that Congress left out of § 1478 a provision similar to that found in § 1446(e) so as to prevent litigants from removing state court proceedings to the bankruptcy court by first putting a co-defendant or co-plaintiff in bankruptcy. To make what I am saying perfectly clear, my present holding does not affect the validity of the Temporary Injunction entered by Judge Farris in so far as it names parties other than Wellington and Whitehall. However, due to the fact that Judge Farris entered the Temporary Injunction subsequent to receiving notice of the removal and prior to the remand, it is a nullity and void in so far as it seeks to enjoin Wellington and Whitehall and encumber the assets of Wellington and Whitehall.

The Order for Remand and the Order Declaring the Temporary Injunction a Nullity will be amended in conformity with these Findings of Fact and Conclusions of Law. The Permanent Injunction and Order Denying the State's Motion to Dismiss these proceedings will stand as entered.