**Mary Kate HEMMERICK, Ronald Hemmerick and Gregory Hemmerick, Plaintiffs,**

v.

**CHRYSLER CORPORATION, Margaret Newcomen, Kevin Newcomen, St. Vincent's Hospital, Harvey R. Leventhal, Michael H. Schuman, and Concord Neurological and Neurosurgical Assoc., P.C., Defendants.**

No. 85 Civ. 1466 (RPP).

United States District Court, S.D. New York.

July 18, 1991.

---

Robert M. Ginsberg, Ginsberg & Broome, P.C., New York City, for plaintiffs.

Warren A. Cohen, Diamond, Rutman & Costello, New York City, for plaintiff Ronald Hemmerick.

Jay P. Mayesh, Stroock & Stroock & Lavan, New York City, for defendant Chrysler Corp.

Barry Gainey, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for defendants Margaret and Kevin Newcomen.

Donald J. Scialabba, Costello & Shea, New York City, for defendant St. Vincent's Hosp.

Alan H. Sproul, Morris & Duffy, New York City, for defendants Harvey R. Leventhal, Michael H. Schuman and Concord Neurological and Neurosurgical Assoc., P.C.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiffs move to vacate the judgment entered herein and for a new trial (1) on the grounds of an alleged material concealment by Juror No. 1, and (2) on the grounds defendants exercised their peremptory challenges on the basis of race and ethnic background. Plaintiffs also move to reduce a lien imposed by this Court on April 29, 1991, against settlement funds received by plaintiffs' counsel and due plaintiff Ronald Hemmerick ("Hemmerick"). Defendant Chrysler Corporation ("Chrysler") moves to enjoin an action filed against it in state court and for sanctions. For the reasons set forth below, the motion for a new trial is denied, the motion to reduce the lien is granted in part and denied in part and the motion to enjoin the state court action and for sanctions is denied.

### 1. Motion for New Trial

The first ground of plaintiffs' motion for a new trial is based on the assertion by plaintiffs' attorney that subsequent to the trial he attended a cocktail party of the New York State Trial Lawyers Association where he met an attorney who has specialized in representing defendants in personal injury cases for over 30 years and who, upon inquiry, turned out to be a cousin of Juror No. 1. The Court's voir dire revealed that Juror No. 1, was a 29-year-old attorney formerly with Skadden Arps, but presently engaged in investment banking and that he had for a period of a week been represented by Stroock & Stroock & Lavan in a landlord-tenant dispute. It did not reveal the existence of the alleged cousin lawyer. Juror No. 1 was questioned in some detail as to whether he could listen to the evidence and engage in jury deliberations in a fair and impartial manner and whether he would be influenced in any way by the fact that he had been represented by Stroock & Stroock & Lavan. He gave satisfactory answers to all questions posed in a candid and deliberate manner, assuring the Court he would not be influenced in any way by that prior experience, and that he would be fair and impartial in listening to the evidence, in listening to the arguments and during jury deliberations. No counsel requested that further questions be posed to Juror No. 1. Subsequently, plaintiffs' counsel challenged Juror No. 1 for cause based on his attorney-client relationship of one week with Stroock & Stroock & Lavan, but the Court denied that challenge.

This complaint was brought by a white woman passenger, now a paraplegic, and her former husband, the driver, charging two defendants with negligence in an automobile accident in which there was no collision; the manufacturer of the other automobile, Chrysler, with manufacture of a defective product; and a hospital and two doctors and their medical practice group with medical malpractice. Prior to voir dire, the Court granted defendants two peremptory challenges for each separate cause of action because of the diverse nature of their defenses and, for balance, increased plaintiffs' peremptory challenges to four.[1] The hospital and the other medical defendants then made application for two challenges each, which the Court granted in view of the nature of their cross-claims,[2] and for balance, awarded plaintiffs two more peremptory challenges for a total of six.

---

1. The malpractice defendants got two challenges, Chrysler got two challenges, and the automobile defendants got two challenges.

2. The other medical defendants maintained they relied on the hospital's radiologist who did not pick up the fracture in a vertebrae in interpreting the X-rays of plaintiff.

After jury selection had been completed and six jurors and two alternate jurors had been sworn in, plaintiffs' counsel raised again the issue of the Court not granting plaintiffs' challenge of Juror No. 1 for cause. The Court again denied plaintiffs' for cause challenge. The next day prior to opening of trial the Court announced it had reconsidered plaintiffs' counsel's application. The Court stated that, in denying the challenge for cause, it had thought of the Court's prior generosity with peremptory challenges to plaintiffs and that its consideration of that generosity might have been improper. Accordingly, the Court granted plaintiffs an additional peremptory challenge at which point plaintiffs' counsel challenged not Juror No. 1 but Juror No. 4, Mr. Klapper, a middle-aged, white male juror.

The Court concludes that plaintiffs' counsel was content with Juror No. 1 as a fair and impartial juror. The Court declines to order a hearing to vacate the judgment or order a new trial on the basis of the new allegations made by plaintiffs' counsel since the allegations are speculative and remote in nature. Furthermore, Juror No. 1's assurances as to his impartiality were unequivocal and satisfactory to plaintiffs' counsel.

■ After the jury had been selected, plaintiffs' counsel also claimed that defendants had systematically excluded black or Latino jurors. Defense counsel expressed outrage and denied that neither race nor ethnicity had governed their challenges. The Court expressed surprise at plaintiffs' counsel's claim and stated that if it had had that perception the Court would have called a halt to it immediately "because there is no place in this courthouse for that kind of selection." Plaintiffs' counsel did not request that the Court require defense counsel to articulate a race neutral explanation for the peremptory strikes under the procedure suggested in *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). Instead plaintiffs asked for an entire new panel. The application was denied and the case proceeded to trial.

On receipt of this post-trial motion, the Court has required counsel for the defense to articulate the reasons for their exercise of peremptory challenges.[3] *See Edmonson v. Leesville Concrete Co.,* —— U.S. ——, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (applying *Batson v. Kentucky* to civil cases). Each counsel has affirmed that its challenges were not based on racial or ethnic grounds and articulated other valid reasons for the peremptory challenges expressed by it. Defense counsel for the automobile negligence cause of action reiterated his pre-trial statement on the record and setting forth grounds other than race for his challenge to Panel Member No. 24, a black woman who was not a driver and had been a plaintiff in an "unfairly" settled products liability action and had been in an auto accident,[4] and Panel Member No. 16, a Latino, whose son had been a plaintiff in an auto accident case. These were obvious grounds for exercise of peremptory challenges.[5]

Defendant Chrysler stated it exercised challenges against Panel Member No. 4, a 29-year-old nursing home worker who was caucasian because her family had been involved in various lawsuits involving accidents, and Panel Member No. 5, a black woman, because she was not a driver and had only an eighth grade education. The automobile defendants and Chrysler exercised an alternate juror peremptory challenge to Panel Member No. 20, a white female who had been involved as plaintiff in several claims defended by insurance companies.

The physician defendants challenged Panel Member No. 11, a young caucasian male, single, free-lance painter, and Panel

---

**3.** Review of the jury selection based on the Court's notes raised the inference that black and Latino panel members were challenged by defendants in greater numbers than white jurors.

**4.** The Court had denied his challenge for cause to this juror.

**5.** It should be noted that, under the system of challenges utilized, Panel Member 24 could only have sat as alternate juror.

Member No. 15, a 25–year–old, single, New York City health representative who appeared to be a Latino female because of her probable concern about matters of health. The Court concludes that defendant St. Vincent's counsel must have challenged Panel Member No. 2, a Latino male, and Panel Member No. 3, a Latino male, each of whom he states he judged to lack the educational background to understand the complex medical issues in the case, namely, testimony concerning whether surgery soon after the accident would have restored more of Mary Kate Hemmerick's physical abilities and, if so, to what extent. He does not recall which jurors he challenged however.

The medical defendants exercised a peremptory challenge to a possible alternate juror, who may have been Latino and about whom counsel had expressed doubts to the Court due to her close association with radiology work, but did not have a valid challenge for cause in view of her answers to the Court's voir dire.

Plaintiffs' counsel exercised all challenges, as well as its alternate challenge against white jurors, all of whom were middle age or older, and only one of whom was a woman.

Having reviewed the submissions by defense counsel as to their articulation of race-neutral or ethnic-neutral reasons for exercise of peremptory challenges, the Court does not believe there are adequate grounds for setting aside the verdict and granting a new trial. There was one black member on the jury and the alternate appeared to be a minority member. The Court had no perception at the time that racial considerations were the basis for the challenges. Tr. at 8–9. Plaintiffs' counsel did not follow up his objections or request each counsel to articulate race-neutral reasons for the challenges, although all defense counsel did deny, in some cases heatedly, his accusation and one or more volunteered race-neutral reasons for their objections.

In weighing whether, despite counsel's articulation of race-neutral or ethnic-neutral reasons for exercise of peremptory challenges, the challenges were apt to have been racially motivated, the Court is presented with a difficult task.[6] However, counsel were able in their post-trial submissions to show that most black and Latino members were challenged for articulated reasons, supported in very large part by the Court's recollection, that had nothing to do with race or ethnic background. The reasons articulated are ones that many defense counsel representing a driver and car owner, a car manufacturer, a hospital or doctors would consider valid.

Accordingly, plaintiffs' motion for a new trial is denied. Defendant Chrysler's cross-motion for Rule 11 sanctions is also denied not meeting the necessary grounds under Rule 11.

### 2. Motion to Reduce Lien

Plaintiffs move to reduce a lien imposed by this Court against settlement funds held by plaintiffs' counsel and due plaintiff Ronald Hemmerick ("Hemmerick"). These funds, roughly $45,000, are Hemmerick's share of an out-of-court settlement of $900,000 reached by plaintiffs and St. Vincent's Hospital just prior to a February 11, 1991 jury verdict in favor of all defendants. The jury dismissed all counts of the complaint, which advanced claims of negligence, products liability, medical malpractice, and loss of consortium.

At a conference held on April 2, 1991, counsel for plaintiffs agreed to deposit $28,000 of Hemmerick's share of the settlement award into an escrow account. The Court at a conference on April 29, 1991 reached the conclusion that Hemmerick was going to force defendants to sue him in Maryland for the amounts of the costs. Accordingly, the Court entered an order on

---

**6.** Amongst the trial bar, juries in Supreme Court, Bronx County, are widely believed to be plaintiff-oriented and to make very high awards. (A majority of Bronx residents are Latino or black). Westchester jurors are believed to make lower awards than jurors from New York City. Jurors of Oriental extraction are believed to make low awards. Young people are believed to make high awards; older people to make lower awards.

April 29, 1991 imposing a lien in the amount of said costs on any funds of Ronald Hemmerick to be received by plaintiffs' counsel. The non-settling defendants, Chrysler, Margaret Newcomen and Kevin Newcomen ("the Newcomens") and Dr. Harvey R. Leventhal, Dr. Michael H. Schuman and Concord Neurological and Neurosurgical Associates, P.C. ("Leventhal," "Schuman" and "Concord," respectively) thereafter filed Bills of Costs totalling $25,520.64. The difference between Hemmerick's share of the settlement and the costs claimed by the non-settling defendants was released from the escrow account to Hemmerick. Ginsberg Aff. filed June 7, 1991.

■ Plaintiffs' motion asked for a reduction in the lien on the basis that the amounts claimed for court reporter and witness fees are excessive.

Rule 54(d) of the Federal Rules of Civil Procedure provides that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs." Standing Order M–10–468, adopted by this District on April 20, 1990, specifies that among the items taxable as costs by the Clerk as a matter of course in any civil case are "[f]ees of the Court Reporter for any part of the original stenographic court transcript of a trial necessarily obtained for use in the case in this Court." Giamboi Aff. filed June 25, 1991, Exh. E.

■ Plaintiffs contend that the "daily copy" obtained by Chrysler, the Newcomens and Leventhal, Schuman and Concord during the course of trial was not "necessarily obtained." Whether court transcripts are "necessarily obtained" is a matter within the sound discretion of the trial judge. *See Oscar Gruss & Son v. Lumbermens Mut. Casualty Co.*, 422 F.2d 1278, 1284–1285 (2d Cir.1970). Here, the defendants did not request copy for the entire trial, but instead limited their requests to those witnesses whose testimony pertained to the claims against them or their defense. Accordingly, all defendants' transcript costs are taxable against Ronald Hemmerick's share of the settlement

award, and plaintiffs' motion to reduce the lien in the amount of the transcript costs is denied.

■ Plaintiffs also challenge the witness fees claimed by Chrysler on its Bill of Costs. As part of its defense at trial, Chrysler utilized expert witnesses from Michigan and Texas. Arguing that "local experts" should have been retained by Chrysler, plaintiffs contest the entire cost of airfare and lodging for these witnesses.[7]

The right to recover witness fees is outlined in 28 U.S.C. § 1821(c)(1) (1988), which provides:

> A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance. Such a witness shall utilize a common carrier at the most economical rate reasonably available. A receipt or other evidence of actual cost shall be furnished.

Standing Order M–10–468 further allows for recovery of subsistence "if it is not practicable for the witness to return to his or her residence from day to day during the trial."

Section 1821 of the United States Code sets no limit on the distance from which a witness may be brought, allowing reimbursement for any "distance necessarily traveled to and from such witness's residence." Litigants normally have an unlimited right to choose their own expert witnesses. It would have been impractical for Chrysler's expert witnesses to return daily to either Michigan or Texas during trial. Chrysler has billed all lodging at the rate of $113.00 per night, which the Court finds reasonable. Since plaintiffs have submitted no evidence demonstrating that Charles R. Hall and Donald F. Huelke, two of Chrysler's witnesses, did not travel at the "most economical rate reasonably available," the costs for these witnesses are

---

**7.** The total cost billed for airfare and lodging for Chrysler's three witnesses is $4135.02.

allowed. Plaintiffs' motion to reduce the lien as to these costs is denied.

■ However, receipts attached to plaintiffs' moving papers for the air travel of a third Chrysler witness, Lee C. Carr, indicate that on the first of his two trips from Houston to New York, from February 3, 1991, to February 5, 1991, Carr flew round trip in first class at a total cost of $1164.00. First-class travel does not constitute "the most economical rate reasonably utilized." Accordingly, this cost is disallowed. Chrysler shall file a new Bill of Costs within 10 days of the date of entry of this opinion reflecting what would have been the round-trip coach airfare for Carr's February 3–5, 1991 trip. Plaintiffs' motion to reduce the lien is granted to the extent Chrysler's revised Bill of Costs is less than its Bill of Costs on file with the Court.

3. Motion to Enjoin State Court Action

■ Chrysler has filed a motion pursuant to 28 U.S.C. § 1651(a) (the "All Writs Act") and 28 U.S.C. § 2283 (the "Anti-Injunction Act") to enjoin prosecution of an action commenced on May 6, 1991 in the Supreme Court of the State of New York, New York County, entitled *Mary Kate Ryan, Ronald Hemmerick & Ginsburg & Broome, P.C. v. Chrysler Corp., Stroock, Stroock & Levan [sic] & Jay Mayesh* ("the state court action").

The events culminating in the filing of the state court action arose in connection with the personal injury action tried by this Court in February 1991. On February 25, 1991 Mayesh, on behalf of Chrysler, sent a letter to Donald Scialabba, counsel for St. Vincent's Hospital, asserting a lien "against any and all sums paid to Ronald Hemmerick out of said settlement award, in satisfaction of his obligation to reimburse Chrysler in full for its costs of this action." The complaint in the state court action states that Chrysler's assertion of a lien "was without legal authority and was tortious," Complaint ¶ 9, and that as a result of Mayesh's letter, St. Vincent's Hospital "delayed payment of the settlement

amount for a considerable period of time," *id.* ¶ 12, causing the state plaintiffs damage in that they "lost a substantial sum of interest," "suffered mental anxiety and emotional distress," and "were compelled to spend considerable time and effort in the preparation of papers and court appearances to respond to the aforesaid letter." *Id.* ¶ 14. The state complaint seeks $50,000 in damages.

Section 2283 of the United States Code provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283 (1988).[8] Chrysler maintains that the second and third exceptions of this statute authorize the Court to enjoin prosecution of the state court action.

■ The second exception applies in two situations. First, a federal court having jurisdiction over an action in rem may enjoin state court proceedings involving the same res. *See Lankenau v. Coggeshall & Hicks,* 350 F.2d 61 (2d Cir.1965). Second, a federal court properly acts "in aid of its jurisdiction" where enjoining state proceedings is "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 295, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970).

Neither application of the second exception controls here. This is not an action in rem. Furthermore, a state court ruling will not "interfere" with any disposition rendered by this Court. The state court action is a suit in tort in which plaintiffs seek damages arising from a letter sent by Chrysler's counsel to counsel for St. Vincent's Hospital, purporting to assert a lien against plaintiffs' settlement award. Such

---

**8.** Similarly, 28 U.S.C. § 1651(a) authorizes federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions."

a lien was subsequently ordered by this Court on April 29, 1991 because Ronald Hemmerick's counsel took the position that each of the defendants would have to initiate actions in Maryland in order to recover their costs. The award of damages by a state court based on a finding of tortious conduct on the part of Chrysler and its counsel will not interfere with this Court's imposition of and supervision over the lien.

The third exception to 28 U.S.C. § 2283 is similarly inapplicable. That exception allows a federal court to enjoin state court proceedings "to protect or effectuate its judgments." The Reviser's Note explains that the purpose of the exception is to prevent relitigation of matters "fully adjudicated by such courts." *See, e.g., Amalgamated Sugar Co. v. NL Indus., Inc.,* 825 F.2d 634 (2d Cir.) (upholding injunction against a state court action seeking declaration that preferred share purchase rights plan was valid where final consent judgment entered by district court established plan's invalidity), *cert. denied,* 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987). Here, the state court action is not barred by res judicata since the claims and issues in that action, if they have any merit, are distinct from those raised before this Court.

Accordingly, Chrysler's motion to enjoin the state court action pursuant to 28 U.S.C. § 1651(a) and 28 U.S.C. § 2283 is denied. Chrysler's request for Rule 11 sanctions based on the filing of the state court action is also denied.

IT IS SO ORDERED.